## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

CLARENCE E. OWENS; and
FRANCES ROGERS,

Plaintiffs

v.

ROBERTSON, ANSCHUTZ, SCHNEID,
CRANE & PARTNERS, PLLC,

JOHN KUNDRAT,

DUANE MORRIS, LLP,

BRETT L. MESSINGER,

BRIAN J. SLIPAKOFF,

ONITY GROUP INC. f/k/a OCWEN
FINANCIAL CORPORATION,

PHH MORTGAGE CORPORATION a/k/a
PHH MORTGAGE,

NEWREZ LLC,

U.S. BANK NATIONAL ASSOCIATION,

Defendants

Civil No. _____

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

## TABLE OF CONTENTS

**NATURE OF ACTION** ...................................................................................................1

**JURISDICTION AND VENUE**......................................................................................2

**PARTIES** ........................................................................................................................2

**FACTS COMMON TO ALL COUNTS** ........................................................................7

    **I.**    **FACTUAL BACKGROUND PERTAINING TO SECURITIZATION, "MORTGAGE SERVICING" AS AN ASSET, AND NEW CENTURY FINANCIAL CORPORATION.** ..............................7

        **i.**    **Basics of Securitization and "Mortgage-Backed Securities"** ................7

        **ii.**    **"Mortgage Servicing" as an asset.** .........................................................15

        **iii.**    **New Century Financial Corporation.** ...................................................17

    **II.**    **NONE OF THE DEFENDANTS NAMED HEREIN ARE THE ORIGINAL CREDITOR OR HOLDER IN DUE COURSE FOR THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, AND THEY HAVE YET TO DEMONSTRATE PURCHASE OF THE UNDERLYING DEBT WHICH IS SUBJECT TO PLAINTIFFS' CLAIMS FOR RECOUPMENT.** ...................................................................................21

    **III.**    **THE DEBT COLLECTOR DEFENDANTS, IN CONSPIRACY WITH OTHER PERSONS (KNOWN AND UNKNOWN TO PLAINTIFFS), ATTEMPTED TO EXTORT MONIES FROM PLAINTIFFS TOWARDS THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, UNDER DURESS (AND THREAT) OF AN ATTEMPTED STATE ASSISTED SEIZURE OF PLAINTIFFS' REAL PROPERTY, BY CREATING; RECORDING; TRAFFICKING; AND/OR PRESENTING FOUR FORGED/FALSELY ACKNOWLEDGED "ASSIGNMENT OF MORTGAGE" INSTRUMENTS THAT ARE VOID AS A MATTER OF FACT AND APPLICABLE LAW** ...............................................25

        **i.**    **First Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument.** .............................................27

        **ii.**    **Second Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument.** .......................................31

        **iii.**    **Third Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument.** .........................................33

        **iv.**    **Fourth Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument.** .......................................34

**v.    Plaintiffs have standing to challenge instruments that are forged and void as a matter of fact (and applicable law), while constituting slander and cloud upon title to Plaintiffs' real property.**....................36

**IV.    THE DEBT COLLECTOR DEFENDANTS, IN CONSPIRACY WITH OTHER PERSONS (KNOWN AND UNKNOWN TO PLAINTIFFS), ATTEMPTED TO EXTORT MONIES FROM PLAINTIFFS TOWARDS THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, UNDER DURESS (AND THREAT) OF AN ATTEMPTED STATE ASSISTED SEIZURE OF PLAINTIFFS' REAL PROPERTY, BY CREATING; TRAFFICKING; AND/OR PRESENTING TWO CONTRADICTORY NOTE INSTRUMENTS, ONE THAT REMAINS PAYABLE TO NEW CENTURY, AND THE OTHER DISPLAYING A FORGED/COUNTERFEIT STAMP MISREPRESENTED TO BE AN INDORSEMENT ON THE PURPORTED "REVERSE SIDE".**....................37

**V.    THE DEBT COLLECTOR DEFENDANTS, WITHOUT PROOF OF PURCHASE, OWNERSHIP, AND ASSIGNMENT OF THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, ARE CONCEALING INSTALLMENTS PAID BY MS. ROGERS, FABRICATING CLAIMS OF DEFAULT, AND CONTINUING LITTON'S UNCONSCIONABLE DEBT COLLECTION PRACTICES.**....................44

**VI.    THE COURT OFFICER DEFENDANTS, IN CONSPIRACY WITH OFC AND NEWREZ, MALICIOUSLY ABUSED PROCESS IN THE SECOND STATE FORECLOSURE ACTION TO PROCURE RELIEF THEREIN BY EMPLOYING FALSE CLAIMS, MISREPRESENTATIONS AND OMISSIONS, PERJURED CERTIFICATIONS, FORGERY, IMPOSTERS, AND FALSE ACKNOWLEDGEMENTS BY NOTARIES EMPLOYED BY THE ENTERPRISE.**....................49

**VII.    PLAINTIFFS HAVE ENDURED SEVERE EMOTIONAL DISTRESS INFLICTED UPON THEM BY THE DEBT COLLECTOR DEFENDANTS, OF WHICH INCLUDES THE COURT OFFICER DEFENDANTS, ACTING IN CONSPIRACY WITH THE STATE ACTOR NOTARY PUBLIC OFFICIALS WHO WERE (AT ALL RELEVANT TIMES) EMPLOYED BY THE OCWEN GROUP DEFENDANTS.**....................58

**CAUSES OF ACTION**....................60

**COUNT ONE**....................60

**COUNT TWO**....................61

**COUNT THREE**....................63

**COUNT FOUR**....................65

**COUNT FIVE**.................................................................................................................70

**COUNT SIX** ................................................................................................................71

**COUNT SEVEN**...........................................................................................................72

**COUNT EIGHT**............................................................................................................74

**PRAYER FOR RELIEF**................................................................................................75

Plaintiffs, Clarence E. Owens and Frances Rogers, appearing pro se, bring this action against the Defendants named herein, seeking compensatory damages (to be determined), treble damages (where applicable), declaratory relief, and punitive damages totaling $1.1 Billion, and in support thereof, sets forth as follows:

## NATURE OF ACTION

This action arises from injuries sustained by Plaintiffs who, together with their now deceased spouses, suffered immensely at the hands of the Defendants, the latter of whom agreed to participate in and actual participation in an association-in-fact enterprise comprised of entities and persons who have each committed two or more separate and distinct acts of racketeering activity spanning nearly two decades and to present date.

The Defendants, who are not the original lender for the subject illegal mortgage debt originated in 2006, have yet to demonstrate holder in due course status, or the purchase and assignment of the illegal debt subject of this action, prior to the original lender's insolvency by bankruptcy petition filed April 2, 2007, and liquidation as of August 1, 2008 (respectively). Instead, the Defendants and their co-conspirators have attempted robbery of monies from Plaintiffs, under duress (and threat) of a state assisted seizure of Plaintiffs' real property through abuse of process through their employment of false pleadings; false claims; misrepresentations and omissions; forgery; false acknowledgments; and perjury, all spearheaded by the lead Defendants named in this action who are attorneys/officers of the court.

Plaintiffs aver that the relief sought herein, including punitive damages, is of public interest and necessary to deter the Defendants and similar situated parties from engagement in the conduct complained of herein which is unconscionable, and constitutes a threat to fundamental principles of our democracy.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 as this matter involves federal claims arising under federal law, along with 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

2.      This Court has personal jurisdiction over Defendants who have had the requisite minimum contacts with the State of New Jersey and continue to regularly conduct business in the State of New Jersey.

3.      Venue lies in the United States District Court for the District of New Jersey, as the subject property is located in the State of New Jersey and a substantial part of the events or omissions upon which Plaintiffs' claims arise, occurred in the State of New Jersey.

4.      Jurisdiction further exists pursuant to 28 U.S.C. §1367 as it pertains to Plaintiffs' claims asserted herein which arise from the laws and statutes of the State of New Jersey.

## PARTIES

5.      Plaintiff, Clarence E. Owens ("Mr. Owens"), is an individual resident of the State of New Jersey.  From January 2012 to the present day, Mr. Owens has maintained possession and ownership of real property located in the Township of Willingboro ("subject property"), the latter of which is subject of the instant matter.  Mr. Owens, at 44 years of age, holds a bachelor's degree in liberal studies from Thomas Edison State University (2023) upon transferring from Howard University wherein Mr. Owens underwent extensive studies and research in the discipline of economics between the years 1998 through 2001.  Since the year 2012 to present date, Mr. Owens accumulated more than 20,000 hours of study and research in the following matters relevant to the above captioned action: (i) origination of residential mortgages; (ii) predatory lending; (iii)

securitization; (iv) the 2008 Financial Crisis; and (v) discoveries and actions taken by State and Federal Authorities pertaining to the practices by banks and non-bank companies related to the origination, servicing, and foreclosure of residential mortgages encumbering real property in this district and interstate.  Mr. Owens is and the surviving spouse of Alesha Lisa Rose Forrester ("Ms. Forrester") (Mr. Owens and Ms. Forrester are hereinafter collectively referred to as "the Owens Family"), the latter of who resided at (and was co-owner of) the subject property until her death on March 22, 2022, four days after the Superior Court of New Jersey Appellate Division issued on March 18, 2022 reversing the trial court's September 13, 2016 order for summary judgment (along with the December 15, 2020 final judgment), that was procured by the Defendants identified below as active participants of the racketeering enterprise complained of herein.  As of the filing of this herein complaint, Mr. Owens is not a party named to in the foreclosure proceedings before the Superior Court of New Jersey under Docket No. F-23883-15 ("Second State Foreclosure Action").

6.      Plaintiff, Frances Rogers ("Ms. Rogers"), is an individual resident of the State of Texas, and the surviving spouse of Thomas U. Rogers ("Mr. Rogers") (Ms. Rogers and Mr. Rogers are hereinafter collectively referred to as "the Rogers Family"), the latter of whom died on June 30, 2009.  The Rogers Family were vested titled to the subject property in 1999, and executed on November 28, 2006 what they then believed was a traditional refinance mortgage loan wherein: (i) New Century Mortgage Corporation ("New Century") is named as lender; (ii) Mr. Rogers is the sole obligor named upon a paper promissory note ("NC Paper Note"); and (iii) the Rogers Family are both named borrowers within a security instrument ("mortgage"), identifying the subject property.  Plaintiffs aver, upon information and belief, Mr. Rogers is the victim of murder upon dying on June 30, 2009, the same day a Defendant named herein as part of a racketeering

enterprise (that persist to present day) illegally commenced foreclosure proceedings in the State Court under Docket No. F-34006-09 ("First State Foreclosure Action").  Ms. Rogers, at 77 years of age, remains a party named in the pending Second State Foreclosure Action, as she struggles with a cancer diagnosis and other chronic health issues.

7.     Defendant Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("RAS Firm"), upon information and belief, is a limited liability company organized and existing pursuant to the laws of the State of Florida.  Defendant, at all-time relevant to the instant matter, acted as debt collectors, officers of the court as attorneys at law in the Second State Foreclosure Action, and member/participant of the racketeering enterprise described herein.  RAS Firm may be served with process of this court directly upon an officer or authorized agent at Defendant's principal place of business located at 130 Clinton Road, Suite 202, Fairfield, New Jersey 07004.

8.     Defendant John Kundrat ("Mr. Kundrat"), upon information and belief, is a citizen of the State of New Jersey.  Defendant, at all-time relevant to the instant matter, acted as an employee for the RAS Firm, a debt collector, an officer of the court as an attorney at law in the Second State Foreclosure Action, and member/participant of the racketeering enterprise described herein.  Mr. Kundrat may be served with process of this court directly upon the Defendant or any officer or authorized agent at Defendant's principal place of business located at 130 Clinton Road, Suite 202, Fairfield, New Jersey 07004.

9.     Defendants RAS Firm and Mr. Kundrat are hereinafter collectively referred to as the "*RAS Group*".

10.     Defendant Duane Morris LLP ("DM Firm"), upon information and belief, is a limited liability general partnership organized and existing pursuant to the law for the State of Delaware.  Defendant, at all-time relevant to the instant matter, acted as debt collectors, officers

of the court as attorneys at law in the Second State Foreclosure Action, and member/participant of the racketeering enterprise described herein.  DM Group may be served with process of this court directly upon an officer or authorized agent at Defendant's principal place of business located at 30 South 17th Street, Philadelphia, PA 19103.

11.     Defendant Brett L. Messinger ("Mr. Messinger"), upon information and belief, is a citizen of the State of New Jersey.  Defendant Mr. Messinger, at all-time relevant to the instant matter, acted as a managing partner for the DM Firm, a debt collector, an officer of the court as an attorney at law in the Second State Foreclosure Action, and member/participant of the racketeering enterprise described herein. Mr. Messinger may be served with process of this court directly upon the Defendant or any officer or authorized agent at Defendant's principal place of business located at 30 South 17th Street, Philadelphia, PA 19103.

12.     Defendant Brian J. Slipakoff ("Attorney Slipakoff"), upon information and belief, is a citizen of the State of Pennsylvania.  Defendant, at all-time relevant to the instant matter, acted as an employee for the DM Group, a debt collector, an officer of the court as an attorney at law in the Second State Foreclosure Action, and member/participant of the racketeering enterprise described herein.  Mr. Slipakoff may be served with process of this court directly upon the Defendant or any officer or authorized agent at Defendant's principal place of business located at 30 South 17th Street, Philadelphia, PA 19103.

13.     Defendants DM Firm, Mr. Messinger, and Mr. Slipakoff are hereinafter collectively referred to as the "*DM Group*".

14.     The RAS Group and DM Group Defendants recited above in paragraphs 7 through 15, are hereinafter collectively referred to as the "*Court Officer Defendants*".

15.     Defendant Ocwen Financial Corporation ("OFC"), upon information and belief, was rebranded as Onity Group Inc. ("Onity") (as of June 10, 2024), a publicly traded company headquartered in West Palm Beach, Florida, organized and existing pursuant to the laws of the State of Florida.  Defendant OFC, at all-time relevant to the instant matter, acted as the parent company for Litton Loan Servicing LP ("Litton"); Ocwen Loan Servicing LLC ("OLS"); and PHH Mortgage Corporation ("PHH"), and a member/participant of the racketeering enterprise described herein.  OFC, now known as Onity, may be served with process of this court upon Joseph J. Samarias as Defendant's chief legal officer or any officer or authorized agent at Defendant's principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409.

16.     Defendant PHH Mortgage Corporation a/k/a PHH Mortgage ("PHH"), upon information and belief, is a wholly owned subsidiary of co-Defendant OFC upon acquisition as of October 4, 2018, with offices in Mount Laurel, New Jersey and West Palm Beach, Florida, organized and existing pursuant to the laws of the State of Maryland.  Defendant, at all-time relevant to the instant matter, acted as a debt collector and member/participant of the racketeering enterprise described herein.  PHH may be served with process of this court upon Joseph J. Samarias as chief legal officer or any officer or authorized agent at Defendant's principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida, 33409.

17.     Defendants OFC n/k/a Onity and PHH, along with OFC's non-party subsidiaries OLS and Litton, are hereinafter collectively referred to as the "*Ocwen Group*".

18.     Defendant NewRez LLC ("NewRez"), upon information and belief, is a limited liability company headquartered in Fort Washington, Pennsylvania, organized and existing pursuant to the laws of the State of Delaware.  Defendant NewRez, at all-time relevant to the

instant matter, acted as a debt collector and member/participant of the enterprise complained of herein, as a subsidiary of New Residential Investment Corp ("NRI").  Defendant NewRez may be served with process of this court upon any officer or authorized agent at Defendant's principal place of business, located at 1100 Virginia Dr Suite 125, Fort Washington, PA 19034.

19.    The Court Officer Defendants, Ocwen Group Defendants, and NewRez recited above in paragraphs ¶¶7 through 18, are hereinafter collectively referred to as the "*Debt Collector Defendants*".

20.    Defendant U.S. Bank National Association ("US Bank"), upon information and belief, is a national banking association formed pursuant to and under the laws of the United States, headquartered in Minneapolis, Minnesota.  Defendant, at all-time relevant to the instant matter, is the purported trustee for "GSAMP TRUST 2007-NC1, Mortgage Pass-Through Certificates, Series 2007-NC1 ("GSAMP Trust 2007-NC1"), and a member/participant of the racketeering enterprise named herein.  US Bank may be served with process of this court upon an officer or authorized agent at Defendant's principal place of business located at 60 Livingston Avenue, St. Paul, Minnesota 55107.

## FACTS COMMON TO ALL COUNTS

**I.    FACTUAL BACKGROUND PERTAINING TO SECURITIZATION, "MORTGAGE SERVICING" AS AN ASSET, AND NEW CENTURY FINANCIAL CORPORATION.**

**i.    Basics of Securitization and "Mortgage-Backed Securities"**

21.    The creation of securities that are marketed as being "mortgage-backed securities" involves a process referred to as "securitization", which is defined by one leading text as follows:

> [A] process of packaging individual loans and other debt instruments, converting the package into a security or securities, and enhancing their credit status or rating to further their sale to third-party investors. The process converts illiquid

individual loans or debt instruments which cannot be sold readily to third-party investors into liquid, marketable securities. These new debt instruments are often termed "asset-backed securities" because each pool is backed by a specific collateral rather than by the general obligation of the issuing corporation or instrumentality. Investors purchase a proportionate share of the assets and the bundle of rights linked to the assets, not a general obligation typical of traditional corporate debt. The asset-backed security is structured under applicable laws to stand on its own and pass through timely payment of interest and principal to investors.

Leon T. Kendall, *Securitization: A New Era in American Finance, in* A PRIMER ONSECURITIZATION 1, 1–2 (Leon T. Kendall & Michael J. Fishman eds., 1996).

22.    Individuals seeking residential mortgage loans constitute the first link in the securitization chain, upon entering the market by interacting with companies such as New Century, which is neither a bank or thrift, and originates mortgage loans using warehouse lines of credit[1] supplied by third parties unbeknownst to Plaintiffs and similarly situated consumers.

23.    Leading up to the 2008 financial crisis and events relevant to the instant matter, investment firms created trust, referred to as a "special purpose entity" or a "special purpose vehicle" and presented to investors and government agencies such as the United States Securities Exchange Commission ("SEC") that said trust were Real Estate Mortgage Investment Conduit ("REMIC") pursuant to 26 U.S.C. § 860D, upon allegedly purchasing and receiving assignment

---

[1] See Union Planters v. Continental, 478 F.3d 759, 761 (6th Cir. 2007) ("When mortgage bankers lack sufficient capital to originate a residential mortgage, they often use warehouse lines of credit, which they obtain by offering as collateral the underlying mortgage instruments. Once the mortgage bankers sell the mortgages on the secondary market, they repay the warehouse lender, so that the commercial bank's collateral rotates continuously. Loans in the warehouse-lending industry may be "wet" or "dry": wet when the lender advances funds before it has in hand the original promissory note, mortgage and assignment of mortgage; dry when the lender advances funds only after it possesses these documents."); See also *Warehouse Lending Fact Sheet*", Mortgage Bankers Association at https://www.mba.org/docs/default-source/uploadedfiles/policy/22841-mba-warehouse-lending-brochure-pages (last checked 05/11/2024).

of a specific number of residential mortgage loans, rendering the trust the mortgage holder. REMICs allow for the tax-free pass-through of cash flows from home loans to purported "mortgage-backed securities". Furthermore, 26 U.S.C. § 860G(3) requires, in part, a purported REMIC trust to purchase "qualified mortgages" which are defined as: "(A) any obligation (including any participation or certificate of beneficial ownership therein) which is principally secured by an interest in real property and which… (i) is transferred to the REMIC on the startup day in exchange for regular or residual interests in the REMIC, (ii) is purchased by the REMIC within the 3-month period beginning on the startup day if, except as provided in regulations, such purchase is pursuant to a fixed-price contract in effect on the startup day,…".

24.     Hence, the primary two documents relating to each mortgage loan that must be validly transferred to the trust as part of the securitization process, thereby assuring a trust obtains the right to enforce the terms of the mortgage, are the promissory note and a security instrument (either a mortgage or a deed of trust). Generally, state laws and the Pooling and Servicing Agreements ("PSA"), the latter of which being a contract that governs the administration of RMBS trusts, require the promissory note and security instrument to be transferred by indorsement, in the same way that a check can be transferred by indorsement, or by sale.[2]  In addition, state laws generally require that the trustee have physical possession of the original, manually signed note in order for the loan to be enforceable by the trustee against the borrower in case of default.

---

[2] *See* N.J.S.A. 12A:9-203.

25.     As set forth within relevant parts of the purported Pooling and Servicing Agreement ("PSA") and "Schedule II" annexed thereto, that were filed with the SEC on March 22, 2007,[3] for GSAMP Trust 2007-NC1, the latter being the purported REMIC trust relevant to the above captioned matter because of the Debt Collector Defendants' false claims:

a.   Article I (Definitions) of the PSA at page 57, defines "REMIC" as: "A "real estate mortgage investment conduit" within the meaning of Section 860D of the Code."; and further defines "*REMIC Provisions*" as "Provisions of the federal income tax law relating to real  estate mortgage investment conduits, which appear at Sections 860A through 860G of Subchapter M of Chapter 1 of the Code, and related provisions, and regulations promulgated thereunder, as the foregoing may be in effect from time to time as well as provisions of applicable state laws.".;

b.   Article I (Definitions) of the PSA at page 31, defines "*Closing Date*" as February 20, 2007; the "Start-up Day" at page 51 is defined in Section 2.05; and Section 2.05 at page 60 sets forth "REMIC Matters" by stating: "The Preliminary Statement sets forth the designations for federal income tax purposes of all interests created hereby. The "Start-up Day" of each Trust REMIC for purposes of the REMIC Provisions shall be the Closing Date.".;

c.   Article I (Definitions) of the PSA at page 51 defines "*Original Purchase Date*" by stating: "*With respect to any Mortgage Loan, the date on which the*

---

3 Retrievable at
https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt
(last checked 05/11/2024).

*Responsible Party sold such Mortgage Loan to the Sponsor pursuant to the Purchase Agreement.*".;

d.  Article I (Definitions) of the PSA on page 59, defines the "*Responsible Party*" as NC Capital Corporation ("NC Capital"), the latter being an affiliate company of New Century.;

e.  Article I (Definitions) of the PSA at page 61 defines the "*Sponsor*" as Goldman Sachs Mortgage Company ("GS Mortgage Co.").;

f.  Article I (Definitions) of the PSA on page 40 defines the "*Depositor*" as GS Mortgage Securities Corp. ("GS Securities").;

g.  Article I (Definitions) of the PSA on page 53 defines the "Trustee" as LaSalle Bank National Association ("LaSalle Bank").;

h.  Article I (Definitions) of the PSA on page 33 defines the "Custodian" as Deutsche Bank National Trust Company ("DBNTC"), and the "Custodial File" as "With respect to each Mortgage Loan, any Mortgage Loan Document which is delivered to the Custodian or which at any time comes into the possession of the Custodian.".;

i.  Article II, Section 2.01(a) of the PSA on page 66, states: "Section 2.01 Conveyance of Mortgage Loans. (a) The Depositor, concurrently with the execution and delivery hereof, hereby sells, transfers, assigns, sets over and otherwise conveys to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund, and the Trustee, on behalf of the Trust, hereby accepts the Trust Fund.".;

j.   Article II, Section at 2.01(b) of the PSA on pages 66-67, states: "In connection with the transfer and assignment of each Mortgage Loan, the Depositor has delivered or caused to be delivered to the Custodian for the benefit of the Certificateholders the following documents or instruments with respect to each Mortgage Loan so assigned… (i) the original Mortgage Note (except for up to 1.00% of the Mortgage Notes for which there is a lost note affidavit and a copy of the Mortgage Note) bearing all intervening endorsements, endorsed "Pay to the order of _____, without recourse" and signed in the name of the last endorsee. To the extent that there is no room on the face of the Mortgage Notes for endorsements, the endorsement may be contained on an allonge unless the Trustee (and Custodian) is advised by the Responsible Party that state law does not so allow. If the Mortgage Loan was acquired by the Responsible Party in a merger, the endorsement must be by "[last endorsee], successor by merger to [name of predecessor]".  If the Mortgage Loan was acquired or originated by the last endorsee while doing business under another name, the endorsement must be by "[last endorsee], formerly known as [previous name]"…";

k.   "Schedule II" sets forth "*Representations and Warranties of the Responsible Party as to the Individual Mortgage Loans*" that the NC Capital as the purported "Responsible Party" became "*the sole owner of record and holder of the Mortgage Loan and the indebtedness evidenced by each Mortgage Note subject to the interest of Responsible Party's Warehouse Lender which will be released on or before the sale to the Sponsor of the Mortgage Loans….*".; and

l.   Article I (Definitions) at page 52 defines "*P&I Advance*" by stating: "*As to any Mortgage Loan or REO Property, any advance made by the applicable Servicer in respect of any Remittance Date representing the aggregate of all payments of principal and interest, net of the Servicing Fee, that were due during the related Due Period on the Mortgage Loans and that were delinquent on the related Remittance Date, plus certain amounts representing assumed payments not covered by any current net income on the Mortgaged Properties acquired by foreclosure or deed-in-lieu of foreclosure as determined pursuant to Section 4.0l(a).*".

26.   The following diagram is a depiction of parties, and required sales and transfers of mortgage loans to GSAMP Trust 2007-NC1 as set forth at Article I ("*Definitions*") and Article II ("*Conveyance of Mortgage Loans*") of the March 22, 2007 PSA for the purported REMIC trust:



Additionally, the foregoing PSA for GSAMP Trust 2007-NC1 at Article XII (Miscellaneous Provisions) and Section 12.03, sets forth the "Governing Law" by stating: "THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE SUBSTANTIVE LAWS OF THE STATE OF NEW YORK APPLICABLE TO AGREEMENTS MADE AND TO BE PERFORMED IN THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HERETO AND THE CERTIFICATEHOLDERS SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.". Hence, N.Y. Est. Powers & Trusts Law § 7-2.4 provides, in relevant part, that: "If the trust is expressed in the instrument creating the estate of the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." N.Y. EPTL 7-2.4.

27.    Plaintiff avers that neither the land records maintained by the Burlington County Clerk's Office, nor the documents enclosed within communications forwarded to Plaintiffs over the last ten (10) years by the Debt Collector Defendants and US Bank using the mail and wire, demonstrates a sale and assignment of the subject NC Mortgage Loan to GSAMP Trust 2007-NC1 in accordance with the conveyance requirements and deadlines set forth in the PSA filed with the SEC on March 22, 2007[4] and recited above in paragraphs 29 and 30 as though fully incorporated herein by reference, with the last sale and assignment from GS Securities as the purported

---

[4] *See* https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt (last checked 05/11/2024), wherein the PSA for GSAMP Trust 2007-NC1 at Article I (Definitions) on page 40, defines the "Depositor" as GS Securities; and Article II (Conveyance of Mortgage Loans) on pages 66-67, requires the last sale of mortgage loans from the Depositor to LaSalle Bank as Trustee for GSAMP Trust 2007-NC1.

"Depositor,  to LaSalle Bank as "trustee" by the February 20, 2007 "Closing-Date" a/k/a "Start-up Date" set forth in the governing PSA for GSAMP Trust 2007-NC1.

      **ii.**       **"Mortgage Servicing" as an asset.**

     28.     In mortgage securitization transactions, a "mortgage servicer" is the entity hired, without the involvement or choice of mortgagors, to perform a list of specific duties in return for compensation, of which includes: (i) collecting payments of principal and interest from mortgagors; (ii) advancing principal and interest and payments to investors, property taxes and hazard insurance premiums; (iii) receiving and answering complaints and questions from mortgagors; and (iv) initiating foreclosure proceedings.  A servicers' potential profits for performing the foregoing tasks are known as the excess servicing fees (ESFs), which represents the difference between the fees charged and servicing costs when borrowers repay mortgages as scheduled without any prepayment or default actions.[5]  Hence, Mortgage servicing assets ("MSAs"), also referred to as "mortgage servicing rights" ("MSRs"), arises from contractual agreements prevalent within purported securitization transactions, wherein the alleged beneficial owners of payments due and owing towards residential mortgage loans, often allows another entity designated as a "mortgage servicer", to earn income for collecting payments from homeowners. Hence, because MSAs have properties similar to other assets, they are traded separately from the original underlying mortgage loans.  MSA values are based upon the discounted sum of expected future cash flows, calculated based upon the expected cash flows generated by the underlying mortgage itself.  An MSA is conceptually similar to a financial derivative in that its value is linked

---

[5] See Getter, Darryl E., "*Mortgage Servicing Assets and Selected Market Developments*" (2022). Congressional Research Service (CRS).

to the performance of an underlying asset, wherein the cash flows for MSAs are linked to the cash flows of an underlying mortgage loans.

29.     Plaintiffs aver that relevant to the instant matter is the 10-Q form filed with the SEC on May 11, 2020[6] by Defendant NewRez's parent company NRI, setting forth the following alleged events and transactions:

    a.   on July 23, 2017, OFC and NRI entered into a Master Agreement (the "Ocwen Master Agreement") and a Transfer Agreement (the "Ocwen Transfer Agreement") pursuant to which OFC and NRI agreed to undertake certain actions to facilitate the transfer from OFC to NRI of OFC's purported remaining interests in the "mortgage servicing rights" relating to loans with an aggregate unpaid principal balance ("UPB") of approximately $110.0 billion; and NRI and OFC concurrently entered into a subservicing agreement pursuant to which OFC, by and through OLS, agreed to "subservice" the mortgage loans related to the agreement (Id. at 19);

    b.   on January 18, 2018, NRI entered into a new agreement regarding the rights to purported MSRs (the "New Ocwen RMSR Agreement"), including a servicing addendum thereto (the "Ocwen Servicing Addendum"), Amendment No. 1 to Transfer Agreement (the "New Ocwen Transfer Agreement") and a Brokerage Services Agreement (the "Ocwen Brokerage Services Agreement" and, collectively, the "New Ocwen Agreements") with OFC, the latter of whom purportedly sold and transferred to NRI certain "Rights to MSRs" and other

---

6 See https://www.sec.gov/ix?doc=/Archives/edgar/data/1556593/000155659320000009/nrz-2020331x10xq.htm (last checked 06/18/2024).

assets related to mortgage servicing rights for loans with UPB of approximately $86.8 billion as of the opening balances in January 2018, and OFC (through OLS) "subservice" the mortgage loans related to the agreement (Id. at 20);

c.   as of March 31, 2020, MSRs representing approximately $66.7 billion UPB of underlying loans were transferred to NRM and NewRez (Id. at 20); and

d.   as of March 31, 2020, NRM engaged third party mortgage servicers, including PHH, in relation to certain MSR purchases, interim subservicers, to perform the operational servicing duties in connection with the MSRs acquired by NRM, in exchange for a subservicing fee which is recorded as "Subservicing expense" (Id. at 17).

30.     Plaintiffs and similarly situated consumers are not able to select which company "services" their mortgage obligations; and they have no control over the transfer and sale of purported MSRs associated with a consumers' mortgage loan.[7]

**iii.**     **New Century Financial Corporation.**

31.     By the end of 2006, the non-bank/non-thrift New Century Financial Corporation ("NC Financial") and its affiliate companies of which includes New Century Mortgage Corporation ("NC Mortgage") (hereinafter collectively referred to as New Century), originated

---

[7] See "*Who is Involved with Mortgage Servicing?*", Urban Institute at https://www.urban.org/policy-centers/housing-finance-policy-center/projects/mortgage-servicing-collaborative/help-me-understand-mortgage-servicing/who-involved-mortgage-servicing#:~:text=Homeowners%20do%20not%20get%20to,servicing%20rights%20to%20another%20servicer (last checked 06/18/2024).

more than $50 billion in residential mortgage loans using warehouse lines of credit[8] supplied by Wall Street Firms,[9] making the company the number two in both residential mortgage originations and issuance of purported "*mortgage-backed securities*"[10], with the bulk of New Century's originations being labeled as "subprime"[11], such as the subject NC Mortgage Loan.

---

[8] See "*Warehouse Lending Fact Sheet*", Mortgage Bankers Association at https://www.mba.org/docs/default-source/uploadedfiles/policy/22841-mba-warehouse-lending-brochure-pages (last checked 05/13/2024) ("Warehouse lending is the well-established practice of depository institutions providing various structured financial solutions – either lines of credit or repurchase agreements – to non-depository independent mortgage banks (IMBs) to facilitate home-lending to individual borrowers."); *see* also Union Planters v. Continental, 478 F.3d 759, 761 (6th Cir. 2007) ("When mortgage bankers lack sufficient capital to originate a residential mortgage, they often use warehouse lines of credit, which they obtain by offering as collateral the underlying mortgage instruments.").

[9] According to a May 6, 2009 article by the Center for Public Integrity, New Century's bankruptcy petition listed Goldman Sachs Mortgage Company, Morgan Stanley Mortgage Capital, Bank of America, Citigroup Global Markets Realty, and Residential Funding Corporation as its top unsecured creditors; and in an SEC filing, New Century said it was supported by $14.1 billion in credit from banks including Bank of America, Barclays, Bear Stearns, Citigroup, Credit Suisse, Deutsche Bank, Morgan Stanley, and UBS to finance its loan originations.  See https://publicintegrity.org/inequality-poverty-opportunity/no-3-of-the-subprime-25-new-century-financial-corp/ (last checked 05/12/2024).

[10] *Id*.

[11] There is no legal definition of "subprime loan," although the federal government has provided guidance on how to identify subprime loans. For example, in 2005, the U.S. Department of Housing and Urban Development ("HUD") published a list of lenders deemed "subprime", wherein New Century was among the entities listed as a "subprime" lender.  Similarly, in 2007 the Treasury Department, Office of the Comptroller of the Currency, Federal Reserve System, Federal Deposit Insurance Corporation, Office of Thrift Supervision, and National Credit Union Administration jointly promulgated an interagency "Statement on Subprime Mortgage Lending." See Dep't of the Treas., et al., Statement on Subprime Lending, 72 FED. REG. 37569, 37572 (July 10, 2007). The interagency guidance explains that certain loan features associated with subprime lending placed borrowers at serious risk of delinquency or foreclosure. Id. at 37572-73.

32.     On November 28, 2006, the Rogers as owners of the subject property, executed documents that were presented by agents for NC Mortgage as a traditional refinance mortgage loan originated in accordance with applicable state and federal laws prohibiting predatory lending and consumer fraud, which included:

a.   a purported debt obligation with a principal sum of $190,800.00, loaned from and owed to New Century.;

b.   a paper promissory note dated November 28, 2006, wherein: (i) New Century is named lender; (ii) Mr. Rogers is named the sole obligor; (iii) the starting principal balance is $190,800.00, repayable in 360 installments pursuant to an adjustable interest rate based on the London Inter Bank Offering Rate ("LIBOR"); and (iv) a maturity date of January 1, 2037 (hereinafter referred to as the "*NC Paper Note*").; and

c.   a security instrument dated November 28, 2006 and recorded by the Office of the Burlington County Clerk's Office on December 21, 2006 at Mortgage Book 11240, Page 852, which displays: (i) an eighteen digit "Mortgage Identification Number" ("MIN")[12] of "100488910111291471" that is located on the top right of page one; (ii) the Rogers named as "borrowers" at ¶B; (iii) Mortgage Electronic Registration Systems, Inc. ("MERS") with a purported P.O. Box address in Flint, Michigan, named as "nominee" a/k/a agent for New Century

---

[12] Upon information and belief, the MIN (100488910111291471) that is displayed at the top right of page one of the subject mortgage instrument, is the unique identifier for an electronic promissory note ("eNote") of even date, wherein: (i) New Century is named lender with a starting balance of $190,8000.00; (ii) Mr. Rogers is named the sole obligor; and (iii) said instrument is registered on the MERS System®/MERS eRegistry® (hereinafter referred to as the "*NC eNote*").

Mortgage, and "mortgagee" under the instrument at ¶C; (iv) names New Century as lender at ¶D; (v) references a note of even date with a principal balance of $190,800.00 due and 11240owing to New Century as lender; and (vi) the legal description for the subject property (hereinafter referred to as the "*NC Mortgage*").

The foregoing debt obligation with a principal balance of $190,800.00, together with the NC Paper Note and NC Mortgage, are hereinafter collectively referred to as the "*NC Mortgage Loan*".

33.     On April 2, 2007, New Century and its affiliate companies became Chapter 11 bankruptcy debtors upon filing a petition in the United States Bankruptcy Court for the District of Delaware. *See* In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC).

34.     On March 19, 2008, New Century's bankruptcy trustee filed a notice of rejection of executory contracts with MERS and the latter's parent company MERSCORP Holdings, Inc. ("MERSCORP").

35.     On March 26, 2008, New Century's bankruptcy examiner filed a detailed report that found New Century was responsible for "*significant improper and imprudent practices related to its loan originations, operations, accounting and financial reporting processes.*" (*Id*. at p. 2).

36.     Upon information and belief, on August 1, 2008, New Century was liquidated, and its assets were transferred to a liquidation trust.  *See* Yvanova v. New Century Mortgage Corp., et al., Case No. S218973 (Cal. Feb. 18, 2016).

## II. NONE OF THE DEFENDANTS NAMED HEREIN ARE THE ORIGINAL CREDITOR OR HOLDER IN DUE COURSE FOR THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, AND THEY HAVE YET TO DEMONSTRATE PURCHASE OF THE UNDERLYING DEBT WHICH IS SUBJECT TO PLAINTIFFS' CLAIMS FOR RECOUPMENT.

37.   Plaintiffs declare that, as it pertains to the disputed NC Mortgage Loan recited above in ¶32 as if fully incorporated herein by reference, none of the Defendants named herein who attempted to collect monies from Plaintiffs towards the subject NC Mortgage Loan, under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property:

a.   are the purported creditor named within the NC Mortgage Loan.;

b.   have presented evidence of holder in due course status as defined at N.J.S.A. 12A:3-302, when demanded/requested by Plaintiffs pursuant to 15 U.S.C. § 1962(g).; and

c.   have presented evidence of their purchase of the underlying debt with a principal balance of $190,800.00, as an accounts receivable reflective upon the ledgers of US Bank as the purported trustee for GSAMP Trust 2007-NC1, when requested by Plaintiffs pursuant to 15 U.S.C. § 1962(g); and starting with the first sale and assignment from New Century, prior to and/or pursuant to New Century's bankruptcy as of April 2, 2007, and liquidation as of August 1, 2008.

38.   Plaintiffs aver that the subject NC Mortgage Loan recited above in paragraph 32, that is subject of the Debt Collector Defendants attempts to collect monies from Plaintiffs, under duress and threat of their attempted (state assisted) seizure of Plaintiffs' real property, is fraud *in*

*factum*; unconscionable; high cost[13]; predatory[14] (*per se*); falsely underwritten and forged by NC Mortgage (through its agents); and subject to Plaintiffs' claim for recoupment, because:

    a.  the Rogers, being persons classified as black (non-white), residing in a predominantly non-white neighborhood, with medically documented disabilities, and above the age of 60 years, were tricked and steered by New Century (through its agents) into executing the NC Mortgage Loan consisting of an adjustable interest rate; and an interest only feature for the first five years, which was a mismatch between the needs and capacity of the Rogers', and there was little likelihood that the Rogers' had the capability to repay with Mr. Rogers' income (alone) as the sole obligor.;

    b.  New Century (by and through its agents) knew – or should have known – the NC Mortgage Loan did not fit the Rogers because the true actual W-2 gross income of $69,350.19 in 2005 for Mr. Rogers as the sole obligor, prompted

---

[13] The Home Mortgage Disclosure Act ("HMDA") requires mortgage lenders to disclose certain information about each mortgage loan originated or purchased in a fiscal year. Pursuant to regulations promulgated by the Federal Reserve Board, since 2004 the HMDA data has included a designation for "high-cost" loans. Identifying certain loans as "high-cost" operates as a proxy for identifying subprime loans. A "high-cost" loan is defined as a first-lien loan with an annual percentage rate and borrowing costs that exceed by more than 3 percentage points Treasury securities of comparable maturity, or a subordinate lien loan that exceeds the Treasury benchmark by more than five points.

[14] See Associates Home Equity Services v. Troup, 343 N.J. Super. 254, 267 (App. Div. 2001), explaining that predatory lending has been described as: "… a mismatch between the needs and capacity of the borrower. . . . In essence, the loan does not fit the borrower, either because the borrower's underlying needs for the loan are not being met or the terms of the loan are so disadvantageous to that particular borrower that there is little likelihood that the borrower has the capability to repay the loan.".   See also Hanson, Samuel G. and Morgan, Donald P., "Predatory Lending?" (2005), Harvard Business School and Federal Reserve Bank of New York.

New Century (by and through its agents) to falsify and grossly inflate Mr. Rogers' income during underwriting,[15] to justify origination of the predatory transaction.; and

c.  Upon information and belief, New Century concealed the true creditor for the monies declared loaned on November 28, 2006, were supplied by a third-party warehouse lender[16] whose name and identity were concealed from the Rogers and omitted from the NC Mortgage Loan.

39.   Plaintiffs further aver that New Century, by and through its agents, concealed from the Rogers that the subject NC Mortgage Loan included the NC eNote, the latter being a transferable record a/k/a electronic promissory note ("eNote"), that: (i) is governed by N.J.S.A.

---

[15] Following the May 18, 2016 order entered in favor of Ms. Rogers by the U.S. Bankruptcy Court for Delaware in Case No. 07-10416, New Century's Chapter 11 Trustee mailed Ms. Rogers documents numbered 1 through 908, which included at pages 88, 320-323, 329, 331, 334, evidence that New Century (by and through its agents) falsified the "*loan application*" and "*telephone verified income*" statement for the NC Mortgage Loan, by misrepresenting that Mr. Rogers as the sole obligor W-2 gross-income for the year 2005 was $115,875.51, contrary to Mr. Rogers' actual W-2 gross income of $69,350.19 with Cherne Contracting Corporation for the year 2005.  Plaintiffs avers that while she and her late husband Mr. Rogers remained unaware that New Century Mortgage falsified Mr. Rogers' income for the year 2005, New Century Mortgage knew that, without falsifying and grossly inflating Mr. Rogers' W-2 gross income to appear as $115,875.51 for the year 2005, Mr. Rogers' actual W-2 gross income of $69,350.19 for the year 2005 and as the sole obligor responsible for repaying 360 installments towards the subject NC Mortgage Loan could not justify placing the Rogers' into said transaction which consisted of interest only installments for the initial 24 installments, followed by principal and interest payments pursuant to an increased interest rate for the remaining 336 installments.

[16] Plaintiffs' allegation that the principal balance of $190,800 subject of the NC Mortgage Loan did not come from the reserves of New Century, and were provided by an undisclosed warehouse lender omitted from the NC Mortgage Loan, arises from the May 6, 2009 article by the Center for Public Integrity at https://publicintegrity.org/inequality-poverty-opportunity/no-3-of-the-subprime-25-new-century-financial-corp/ (last checked 05/12/2024), which cites to the creditors listed in New Century's bankruptcy petition and SEC filings.

12A:9-105, the Uniform Electronic Transactions Act (UETA), and the Electronic Signatures in

Global and National Commerce Act (ESIGN Act); (ii) is liquid and has a principal balance of

$190,800.00; (iii) was assigned an eighteen digit MIN (100488910111291471) that is displayed

on the upper right side of the security instrument for the subject NC Mortgage Loan, and said MIN

serves as the unique identifier for electronic loans registered on the MERS System®/MERS

eRegistry®[17]; (iv) existed prior to the Rogers' execution of the subject NC Paper Note and NC

Mortgage on November 28, 2006; and (v) was forged by New Century (through its agents) because

Mr. Rogers was unaware the NC eNote was made part of the NC Mortgage Loan, did not give his

consent for its existence, and did not electronically sign the NC eNote.

40.     Plaintiffs aver that their claim for a declaratory judgment granting recoupment to

extinguish the total amount that the Debt Collector Defendants presently assert is due and owing

towards the subject fraud in factum NC Mortgage Loan described above in paragraphs 38 and 39,

remains timely and allowable pursuant to controlling state law.  *See* Nester v. O'Donnell, 301 N.J.

Super. 198, 208 (App. Div. 1997); *see also* Beneficial Finance Co. v. Swaggerty, supra, 86 N.J. at

609, 432 A.2d 512, quoting Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed.

1421, 1428 (1935); *see* also N.J.S.A. 12A:3-305 – Defenses and claims in recoupment.  Plaintiffs

further declare that any claim of monies being owed to the Debt Collector Defendants towards the

---

[17] *See* the MERS' website at https://www.mersinc.org/about/faq (last checked 06/19/2024), for
"Abouts Us Frequently Asked Questions – What is the MERS® eRegistry", stating in part that:
"The MERS® eRegistry is a system of record that identifies the owner (Controller) and
custodian (Location) for registered eNotes, providing greater liquidity, transferability and
security for lenders. It will reduce the risk and generate more profits for lenders because the
Notes registered on it will be in electronic format. It shortens the timeframe between the closing
and the securitization of the loan, enabling the Note to move instantly, creating faster funding.".

subject NC Mortgage Loan, is subject to setoff arising from Plaintiffs claims against the same

Defendants as set forth below.

**III.    THE DEBT COLLECTOR DEFENDANTS, IN CONSPIRACY WITH OTHER PERSONS (KNOWN AND UNKNOWN TO PLAINTIFFS), ATTEMPTED TO EXTORT MONIES FROM PLAINTIFFS TOWARDS THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, UNDER DURESS (AND THREAT) OF AN ATTEMPTED STATE ASSISTED SEIZURE OF PLAINTIFFS' REAL PROPERTY, BY CREATING; RECORDING; TRAFFICKING; AND/OR PRESENTING FOUR FORGED/FALSELY ACKNOWLEDGED "ASSIGNMENT OF MORTGAGE" INSTRUMENTS THAT ARE VOID AS A MATTER OF FACT AND APPLICABLE LAW.**

41.    Plaintiffs aver that, within the last four (4) years and to present, the RAS Firm; Mr.

Kundrat; DM Firm; Mr. Messinger; Mr. Slipakoff; OFC;  PHH; and NewRez as Debt Collector

Defendants named herein, acting in conspiracy with other persons of which includes (but not

limited to) known and unknown non-parties to this action[18], used the mail and/or wire to demand

monies from Plaintiffs under duress (and threat) of an attempted state assisted seizure of Plaintiffs'

real property, by claiming that Defendant US Bank (as the purported trustee for GSAMP Trust

2007-NC1) is the owner/creditor with possession of (and right to enforce) the subject fraud in

factum NC Mortgage Loan, without ever demonstrating:

a.  the purported REMIC trust took ownership and title in accordance with the

conveyance requirements (and deadlines) set forth in the PSA filed with the

---

[18] Plaintiffs aver several known non-parties to this action with whom the Debt Collector Defendants have acted in conspiracy with includes, but is not limited to, (i) notary publics who, at all times relevant to the instant action, were employed by the Ocwen Group; and (ii) Gina Feezer ("Ms. Feezer"), the latter of whom being the affiant for the August 3, 2023 certification that the DM Group, OFC, PHH, and NewRez caused to be filed on August 9, 2023 in the Second State Foreclosure Action against Ms. Rogers.

SEC on March 22, 2007,[19] as recited above in paragraphs 29 and 30 as though fully incorporated herein by reference, wherein the last sale and assignment of assets to GSAMP Trust 2007-NC1 were required from GS Securities as the purported "Depositor" to LaSalle Bank as "trustee" by the February 20, 2007 "Closing-Date" a/k/a "Start-up Date"; and

b.  the first sale and assignment from NC Mortgage, prior to and/or pursuant to New Century's bankruptcy as of April 2, 2007,[20] and liquidation as of August 1, 2008.[21]

42.  Plaintiffs further aver that, within the last four (4) years and to present date, the Debt Collector Defendants, acting in conspiracy with other persons, in furtherance of their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan, under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property, used the mail and/or wire to traffic and/or present four forged/falsely acknowledged "assignment" instruments complained of herein, each of which:

---

[19] Retrievable at
https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt
(last checked 05/11/2024).

[20] *See* In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC).

[21] *See* Yvanova v. New Century Mortgage Corp., et al., Case No. S218973 (Cal. Feb. 18, 2016) ("The lender, and beneficiary of the trust deed, was defendant New Century Mortgage Corporation (New Century). New Century filed for bankruptcy on April 2, 2007, and on August 1, 2008, it was liquidated and its assets were transferred to a liquidation trust...."); *see also* U.S. Bank v. Rogers, No. A-1313-20, 10 n.2 (App. Div. Mar. 18, 2022) ("…There is no information in the record regarding disposition of the note after New Century's bankruptcy and liquidation…").

a.   was created and/or recorded in the local land records by the Ocwen Group and/or the Court Officer Defendants as indicated/stated within each document.;

b.   contains materially false claims of assignment for the NC Paper Note and/or NC Mortgage.;

c.   contains materially false claims of considerations declared paid and received by falsely designated assignees and assignors.;

d.   displays the names and forged signatures of imposters employed by the Ocwen Group and/or non-parties, the latter of whom are co-conspirators who agreed to participate in and actual participation in the association-in-fact enterprise complained of herein; said imposters lacked the capacities claimed within the documents; and said imposters also lacked knowledge as to the ownership; location; and possession of the subject NC Mortgage Loan.; and

e.   displays false acknowledgments by notaries employed by the Ocwen Group and/or non-parties to this action who are co-conspirators who agreed to participate in and actual participation in the association-in-fact enterprise complained of herein.

i.      **First Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument**.

43.    Plaintiffs declare that, during the last four (4) years and to present date, the RAS Firm; Mr. Kundrat; DM Firm; Mr. Messinger; Mr. Slipakoff; OFC; PHH; and NewRez as Debt Collector Defendants named herein, acting in conspiracy with other persons, and in furtherance of their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property, have trafficked and/or presented the first of four forged/falsely acknowledged

instruments titled "assignment of mortgage", that was recorded by the Office of the Burlington County Clerk on August 5, 2009, at Book AB1948, Page 259 ("*First Forged AOM*").  Said document that was submitted by (and requested to be returned to upon recording) the now defunct law firm Phelan Hallinan & Schmieg, P.C. ("PHS Firm"), wherein MERS as the purported nominee for NC Mortgage on June 19, 2009, is designated the purported "assignor" of the subject fraud in factum NC Mortgage Loan, in return for a purported consideration of "Good and Valuable Consideration" declared paid to MERS by Bank of America National Associations ("BOA") as the purported trustee for GSAMP Trust 2007-NC1 and purported "assignee", and under the purported "care of" Litton with an address in Texas.  Plaintiffs aver that, at all-time relevant to the above captioned matter, the Debt Collector Defendants each knew (or should have known) that the statements set forth in the First Forged AOM are false and the document is a forgery, falsely notarized, and void as a matter of fact and applicable law, because:

        a.  MERS, by and through its counsel admitted during judicial proceedings in 2005[22] and 2011[23], that: (i) MERS does not originate, purchase, or assignment

---

[22] See the October 21, 2005 order and opinion in <u>Mortgage v. Nebraska</u>, 270 Neb. 529, 532-33 (Neb. 2005) ("MERS argues that it does not acquire mortgage loans and is therefore not a mortgage banker under § 45-702(6) because it only holds legal title to members' mortgages in a nominee capacity and is contractually prohibited from exercising any rights with respect to the mortgages (i.e., foreclosure) without the authorization of the members. Further, MERS argues that it does not own the promissory notes secured by the mortgages and has no right to payments made on the notes.").

[23] See the February 11, 2011 certification of attorney Brandi Peeples ("Attorney Peeples") as counsel for MERS, that was submitted to this Court in <u>In The Matter of Residential Mortgage Foreclosure Pleading and Document Irregularities</u> (Docket No.: F-00238-11) ("MERS is not a mortgage servicer, nor does MERS own beneficial interests in promissory notes.") (Id. at ¶9), resulting in the August 22, 2011 opinion and order entered in favor of MERS in <u>In The Matter of Residential Mortgage Foreclosure Pleading and Document Irregularities</u> (Docket No.: F-00238-11), releasing MERS from Administrative Order 01-2010 ("And it appearing based on proofs

Continued on following page

any residential mortgage loans; (ii) MERS has never taken interest in any residential mortgage loans; and (iii) MERS is contractually prohibited from taking any action upon any loans.;

b. MERS has never acted as a document custodian for any residential mortgage loans as MERS and its parent company admit to present date on their website[24].;

c. there is no evidence that an agency relationship existed between NC Mortgage and MERS as of the November 28, 2006 date assigned to the subject NC Mortgage Loan, and any agency relationship that did exist, ceased as of the March 19, 2008 cancellation of executory contracts with MERS by New Century's bankruptcy trustee.;

d. New Century and its affiliate companies, which includes NC Mortgage as lender named in the subject fraud in factum NC Mortgage Loan, were Chapter 11 bankruptcy debtors as of April 2, 2007[25]; New Century's assets were

---

submitted that MERS does not servicer any residential mortgages in New Jersey, does not originate mortgage loans in New Jersey, and that no residential foreclosure actions are instituted in its name in New Jersey….").

[24] See https://www.mersinc.org/about/faq (last checked June 11, 2024), owned and operated by MERS' parent company, MERSCORP, wherein at the page titled "ABOUT", "MERSCORP FAQ", and "Does MERS have the documents for loans registered on the MERS® System?", MERSCORP declares: "*No. MERS, MERSCORP Holdings or the MERS® System are not document custodians and do not hold promissory notes or mortgage documents on behalf of lenders, servicers or investors. We are not responsible for keeping mortgage records—the servicer maintains the loan files*.".

[25] *See* In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC).

liquidated as of August 1, 2008[26]; the PSA for GSAMP Trust 2007-NC1 filed with the SEC on March 22, 2007 declared its assets consisted of residential mortgage loans acquired through a series of purchases and assignments, the last from GS Securities as "depositor" to LaSalle Bank as "trustee"[27].;

e.  the name and purported signature of Judith T. Romano ("Attorney Romano") displayed within the document as a purported officer of MERS, is a forgery because – at all relevant times – Attorney Romano was employed by the PHS Firm, and MERS has never had any such employees as admitted by MERSCORP's executive William Hultman ("Mr. Hultman") during depositions on April 7, 2010 in <u>Bank of New York as trustee vs. Victor Ukpe, et al.</u> NJ Sup. Ct., (Docket No. F-10209-08).[28]; and

---

[26] *See* <u>Yvanova v. New Century Mortgage Corp.</u>, et al., Case No. S218973 (Cal. Feb. 18, 2016) ("The lender, and beneficiary of the trust deed, was defendant New Century Mortgage Corporation (New Century). New Century filed for bankruptcy on April 2, 2007, and on August 1, 2008, it was liquidated and its assets were transferred to a liquidation trust...."); *see also* <u>U.S. Bank v. Rogers</u>, No. A-1313-20, 10 n.2 (App. Div. Mar. 18, 2022) ("…There is no information in the record regarding disposition of the note after New Century's bankruptcy and liquidation…").

[27] *See* https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt (last checked 05/11/2024), wherein the PSA for GSAMP Trust 2007-NC1 at Article I (Definitions) on page 40, defines the "Depositor" as GS Securities; and Article II (Conveyance of Mortgage Loans) on pages 66-67, requires the last sale of mortgage loans from the Depositor to LaSalle Bank as Trustee for GSAMP Trust 2007-NC1.

[28] *See* the April 7, 2010 deposition of William Hultman as an executive of MERS' parent company MERSCORP in <u>Bank of New York as trustee vs. Victor Ukpe, et al.</u> NJ Sup. Ct., (Docket No. F-10209-08), admitting that the same MERS designated within the assignment instrument attached as "Exhibit H" to the Feezer Cert. filed herein on August 9, 2023, has no such employees (Id. Deposition of Hultman at p. 69, L. 13 - 18, 25, and p. 70, Lines 1-9).

f.   the name and false acknowledgment by Pennsylvania notary public Eugne Jaskiewicz ("Notary Jaskiewicz") who, at all relevant times, was also employed by the PHS Firm along with Attorney Romano, and he knew (or should have known) that Attorney Romano never appeared before the notary public to present sufficient identification on June 19, 2009 as a purported officer of MERS as falsely claimed within the First Forged AOM instrument.

Plaintiffs further aver the First Forged AOM instrument is forged/falsely uttered because, according to the August 11, 2020 letter from BOA, addressed to Ms. Rogers in response to a complaint filed with the Consumer Financial Protection Bureau ("CFPB"), BOA declared it has no record of an assignment for the subject NC Mortgage Loan, contrary to the false claims set forth in the First Forged AOM instrument which the Debt Collector Defendants have trafficked and/or presented using the mail and/or wire within the last four (4) years (and to present date), to further their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan, under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property.

ii.   __Second Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument__.

44.   Plaintiffs aver that, during the last four (4) years and to present date, the RAS Firm; Mr. Kundrat; DM Firm; Mr. Messinger; Mr. Slipakoff; OFC;  PHH; and NewRez as Debt Collector Defendants named herein, acting in conspiracy with other persons of which includes (but not limited to) known and unknown non-parties to this action, and in furtherance of their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property, have willfully trafficked and/or present the second of four forged/falsely acknowledged instrument that

was created and/or recorded by OFC, OLS, and/or the DM Firm on April 22, 2014 in the Office

of the Burlington County Clerk at Book OR13121, Page 6995 ("*Second Forged AOM*"), and – like

the preceding First Forged AOM of record – is also titled "assignment of mortgage", and is also a

forgery (and void as a matter of fact and applicable law) because the Second Forged AOM:

    a.  follows (and depends upon) the First Forged AOM instrument recited above in

        paragraph 43.;

    b.  falsely states that on April 7, 2014, OLS as the purported agent for BOA,

        assigned the subject NC Mortgage to Defendant US Bank as the purported

        trustee for GSAMP Trust 2007-NC1, under the purported care of OLS, which

        is false according to BOA's August 11, 2020 letter to Ms. Rogers and the CFPB,

        wherein BOA claimed it was never assigned the subject NC Mortgage Loan.;

    c.  falsely implies an assignment of the subject NC Mortgage occurred on April 7,

        2014 to GSAMP Trust 2007-NC1, after the purported trust was already closed

        as of February 20, 2007, and the last sale of any mortgage loans thereto was

        required from GS Securities as "depositor" to LaSalle Bank as "trustee",

        according to the PSA filed with the SEC on March 22, 2007[29].;

    d.  displays the name and forged signature of "Rene A. Ponzio" ("Ms. Ponzio")

        appears therein as a fictitious "authorized signor" for BOA by and through its

        purported agents Litton Loan/OLS when, at all relevant times, Ms. Ponzio was

---

[29] *See* https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt (last checked 05/11/2024), wherein the PSA for GSAMP Trust 2007-NC1 at Article I (Definitions) on page 40, defines the "Depositor" as GS Securities; and Article II (Conveyance of Mortgage Loans) on pages 66-67, requires the last sale of mortgage loans from the Depositor to LaSalle Bank as Trustee for GSAMP Trust 2007-NC1.

employed by Defendants OFC and/or OLS and lacked the capacity claimed within the Second Forged AOM.; and

e. displays the name and false acknowledgement of Florida notary public Shavene Sharpe ("Notary Sharpe") who, at all relevant times, was employed by OFC and/or OLS, and knew her co-worker (Ms. Ponzio) never appeared before the notary public and never presented sufficient evidence as an "authorized signor" for BOA on April 7, 2014, as falsely claimed in the Second Forged AOM.;

iii.      **Third Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument.**

45.    Plaintiffs aver that, during the last four (4) years and to present date, the RAS Firm; Mr. Kundrat; DM Firm; Mr. Messinger; OFC; PHH; and NewRez as Debt Collector Defendants named herein, acting in conspiracy with other persons of which includes (but not limited to) known and unknown non-parties to this action, and in furtherance of their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property, have willfully trafficked and/or present the second of four forged/falsely acknowledged instrument that OFC and/or OLS created and caused to be recorded on December 11, 2017 in the Office of the Burlington County Clerk at OR-Book 13311, Page 5752 ("*Third Forged AOM*"), and – like the preceding First Forged AOM and Second Forged AOM instruments of record – is also titled "assignment of mortgage", and is also a forgery (and void as a matter of fact and applicable law) because the Third Forged AOM:

a. follows (and depends upon) the First Forged AOM and Second Foged AOM instruments recited above in paragraphs 43 and 44 (respectively).;

b. falsely states that on October 24, 2017, Litton as the purported attorney in fact for BOA as the purported trustee for GSAMP Trust 2007-NC1, assigned the

subject NC Mortgage to Defendant US Bank as the purported trustee for GSAMP Trust 2007-NC1, under the purported care of OLS, which is false according to BOA's August 11, 2020 letter to Ms. Rogers and the CFPB, wherein BOA claims it was never assigned the subject NC Mortgage Loan; and GSAMP Trust 2007-NC1 was already closed as of February 20, 2007 and the last sale of any mortgage loans thereto was required from GS Securities as "depositor" to LaSalle Bank as "trustee", according to the PSA filed with the SEC on March 22, 2007[30].;

c. displays the name and purported signature of "Amanda E. Jordan" ("Ms. Jordan") as a fictitious "Vice President" for Litton Loan as the alleged attorney in fact for BOA when, at all relevant times, Ms. Jordon was employed by Defendant OFC and/or OLS.; and

d. displays the name and false acknowledgement of Florida notary public Natasha Holt ("Notary Holt") who, at all relevant times, Notary Holt was employed by OFC and/or OLS, and knew her co-worker (Ms. Jordon) never appeared before the notary public and never presented sufficient evidence as a "Vice President" for Litton Loan as the purported attorney in fact for BOA on October 24, 2017, as falsely claimed in the Third Forged AOM.;

iv.      **Fourth Forged/Falsely Acknowledged "Assignment of Mortgage" Instrument**.

46.      Plaintiffs aver that, during the last four (4) years and to present date, the RAS Firm; Mr. Kundrat; DM Firm; Mr. Messinger; OFC; PHH; and NewRez as Debt Collector Defendants

---

[30] Id.

named herein, acting in conspiracy with other persons of which includes (but not limited to) known and unknown non-parties to this action, and in furtherance of their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property, have willfully trafficked and/or presented the last of four forged/falsely acknowledged instrument that OFC, PHH, and/or the RAS Firm created and caused to be recorded on July 24, 2019 in the Office of the Burlington County Clerk at OR-Book 13311, Page 5752 ("*Fourth Forged AOM*"), and – like the preceding First Forged AOM; Second Forged AOM; Third Forged AOM instruments of record – is also titled "assignment of mortgage", and is also a forgery (and void as a matter of fact and applicable law) because the Fourth Forged AOM:

a. follows (and depends upon) the First Forged AOM; Second Forged AOM; and Fourth Forged AOM instruments recited above in paragraphs 43, 44, and 45 (respectively).;

b. falsely states that on July 10, 2019, BOA as the purported trustee for GSAMP Trust 2007-NC1, assigned the subject NC Mortgage to Defendant US Bank as the purported trustee for GSAMP Trust 2007-NC1, under the purported care of PHH, which is false according to BOA's August 11, 2020 letter to Ms. Rogers and the CFPB, wherein BOA claims it was never assigned the subject NC Mortgage Loan; and GSAMP Trust 2007-NC1 was already closed as of February 20, 2007 and the last sale of any mortgage loans thereto was required

from GS Securities as "depositor" to LaSalle Bank as "trustee", according to

the PSA filed with the SEC on March 22, 2007[31].;

c. displays the name and forged signature of "Deborah Patricia Marrero" ("Ms.
Marrero") as a fictitious "Assistant Vice President" for BOA because, at all
relevant times, Ms. Marrero was employed by Defendants OFC, OLS, and/or
PHH; and

d. displays the name and false acknowledgement of Florida notary public James
Quinlan ("Notary Quinlan") who, at all relevant times, was employed by OFC
and/or OLS, and knew his co-worker (Ms. Marrero) never appeared before the
notary public and never presented sufficient evidence as an "Assistant Vice
President" for BOA on July 10, 2019, as falsely claimed in the Fourth Forged
AOM.

v. **Plaintiffs have standing to challenge instruments that are forged and void as
a matter of fact (and applicable law), while constituting slander and cloud
upon title to Plaintiffs' real property.**

47. Plaintiffs aver that, while third-parties generally lack standing to challenge a

contract and/or assignment for which they are not a party, Plaintiffs have standing to challenge the

four recorded instrument that are styled as "assignments of mortgage" and recited above in

paragraphs 43 through 46, because: (i) said documents are void and forged as a matter of fact and

applicable law[32], for neither of the two falsely designated assignors named within the four

---

[31] Id.

[32] *See* <u>Szelc v. Stanger</u>, Civil No. 08-4782 (AET), 7 (D.N.J. Apr. 18, 2011) ("It appears well-
established that the effect of a forgery is that the forged document is null and void. See, e.g., In
re Galtieri, 2007 WL 2416425, at *6 (Bankr. D.N.J.) (declaring deed null and void as a result of
forgery); Roger A. Cunningham, William B. Stoebuck Dale A. Whitman, The Law of Property, §

Continued on following page

documents had rights to, interest in, and/or ownership of the subject fraud in factum NC Mortgage

Loan, starting with the First Forged AOM that was co-created and recorded by Litton, falsely

designating MERS as the purported assignor (as the alleged nominee for New Century) on June

19, 2009, after MERS previously admitted in judicial proceedings (and upon its website, to present

date) that it has ***never*** taken ownership of and/or possession of any residential mortgage loans

wherein the security instrument designates MERS as the "nominee" and "mortgagee".  *See* Bank

of N.Y. v. Raftogianis, 418 N.J. Super. 323, 348-49 (N.J. Super. 2010) ("It was entirely appropriate

to argue that the February 2009 assignment from MERS, as nominee for American Home

Acceptance, to the Bank of New York as Trustee, was ineffective. From the court's perspective,

that assignment was, at best, a distraction.").

**IV.  THE DEBT COLLECTOR DEFENDANTS, IN CONSPIRACY WITH OTHER
PERSONS (KNOWN AND UNKNOWN TO PLAINTIFFS), ATTEMPTED TO
EXTORT MONIES FROM PLAINTIFFS TOWARDS THE SUBJECT FRAUD IN
FACTUM NC MORTGAGE LOAN, UNDER DURESS (AND THREAT) OF AN
ATTEMPTED STATE ASSISTED SEIZURE OF PLAINTIFFS' REAL
PROPERTY, BY CREATING; TRAFFICKING; AND/OR PRESENTING TWO
CONTRADICTORY NOTE INSTRUMENTS, ONE THAT REMAINS PAYABLE
TO NEW CENTURY, AND THE OTHER DISPLAYING A
FORGED/COUNTERFEIT STAMP MISREPRESENTED TO BE AN
INDORSEMENT ON THE PURPORTED "REVERSE SIDE".**

---

11.9 at 782 (1984)"); *see also* N.J. Stat. § 46:2-2 ("Nothing in this title contained shall be
construed to make good, valid or effectual any fraud or forgery, made or used in or about any
powers of agency, letters of attorney, deeds, writings or records, last wills or testaments, bargains
and sales, or other conveyances of estates of inheritance, grounded thereupon."); *see also* N.J.
Stat § 2C:21-1 ("A person is guilty of forgery if, with purpose to defraud or injure anyone, or
with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor: (1)
Alters or changes any writing of another without his authorization; (2) Makes, completes,
executes, authenticates, issues or transfers any writing so that it purports to be the act of another
who did not authorize that act or of a fictitious person, or to have been executed at a time or
place or in a numbered sequence other than was in fact the case, or to be a copy of an original
when no such original existed; or(3) Utters any writing which he knows to be forged in a manner
specified in paragraph (1) or (2)....").
.

48.     Plaintiffs declare that, within the last four (4) years and to present, the DM Firm; Mr. Messinger; Mr. Slipakoff; OFC;  PHH; and NewRez, acting in conspiracy with other persons of which includes (but not limited to) known and unknown non-parties to this action, used the mail and/or wire to claim US Bank (as the purported trustee for GSAMP Trust 2007-NC1) is the owner/creditor with possession of (and right to enforce) the subject fraud in factum NC Mortgage Loan, without ever presenting evidence demonstrating: (i) the purported REMIC trust took ownership and title in accordance with the conveyance requirements and deadlines set forth in the PSA filed with the SEC on March 22, 2007,[33] as recited above in paragraphs 29 and 30 as though fully incorporated herein by reference, wherein the last sale and assignment of assets to GSAMP Trust 2007-NC1 were required from GS Securities as the purported "Depositor" to LaSalle Bank as "trustee" by the February 20, 2007 "Closing-Date" a/k/a "Start-up Date"; and (ii) the first sale and assignment from New Century, prior to and/or pursuant to New Century's bankruptcy as of April 2, 2007,[34] and liquidation as of August 1, 2008.[35]

---

[33] *See* https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt (last checked 05/11/2024), wherein the PSA for GSAMP Trust 2007-NC1 at Article I (Definitions) on page 40, defines the "Depositor" as GS Securities; and Article II (Conveyance of Mortgage Loans) on pages 66-67, requires the last sale of mortgage loans from the Depositor to LaSalle Bank as Trustee for GSAMP Trust 2007-NC1.

[34] *See* In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC).

[35] *See* Yvanova v. New Century Mortgage Corp., et al., Case No. S218973 (Cal. Feb. 18, 2016) ("The lender, and beneficiary of the trust deed, was defendant New Century Mortgage Corporation (New Century). New Century filed for bankruptcy on April 2, 2007, and on August 1, 2008, it was liquidated and its assets were transferred to a liquidation trust...."); *see also* U.S. Bank v. Rogers, No. A-1313-20, 10 n.2 (App. Div. Mar. 18, 2022) ("…There is no information in the record regarding disposition of the note after New Century's bankruptcy and liquidation…").

49.     Plaintiffs further aver that, within the last four (4) years and to present, the DM Firm; Mr. Messinger; Mr. Slipakoff; OFC;  PHH; and NewRez, acting in conspiracy with other persons of which includes (but not limited to) known and unknown non-parties to this action, and in furtherance of their attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan, under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property, used the mail and/or wire to create; traffic; and/or present two contradictory promissory note instruments, both of which were presented by the Defendants as purported "true copies" of the original NC Paper Note instrument signed by Mr. Rogers on November 28, 2006 as the sole obligor, wherein:

a.   the note instrument enclosed within the January 5, 2024 and May 7, 2024 letters from Defendant NewRez under the purported care of Defendant PHH, in response to Plaintiffs' complaint filed with the CFPB under case numbers 231222-12830907; 231222-12832464; 231222-12832374; 231222-12832562; and 240421-14022012, which said Defendants claim is a "true copy" of the original NC Paper Note signed by Mr. Rogers on November 28, 2006: (i) is still payable to New Century without any indorsements on page five of five; (ii) there is no purported indorsement on the reverse side of page five of the note instrument enclosed therein; and (iii) there is no separate piece of paper displaying a stamp affixed thereto, following page five of the note instrument, all of which is similar to the note instrument enclosed within pages 183 through 188 from the 908 pages Ms. Rogers received from New Century's bankruptcy trustee in accordance with the May 18, 2016 order entered by the U.S.

Bankruptcy Court for the District of Delaware in <u>In Re: New Century TRS</u> <u>Holdings, Inc.</u> (Case No. 07-10416).; and

b. the purported note instrument which the DM Firm, Mr. Messinger, Mr. Slipakoff, OFC, PHH, and NewRez trafficked and/or presented in the Second State Foreclosure Action on August 9, 2023, as the purported "true copy" of the original NC Paper Note signed by Mr. Rogers on November 28, 2006, without an indorsement by NC Mortgage the last page (five), and included a separate piece of paper displaying an undated stamp which the Debt Collector Defendants falsely claim to be a purported indorsement by New Century on the purported "reverse side" of the last page, when the Debt Collector Defendants knew (or should have known): (i) the original NC Paper Note instrument signed by Mr. Rogers on November 28, 2006, is single sided and an indorsement pursuant to N.J.S.A. 12A:3-204 must be placed on the face of the last page because there is no "reverse side"; and (ii) the name and purported signature of "Steve Nagy" that appears on the undated stamp affixed to the suddenly appearing piece of paper, is a forgery previously identified in the Florida Office of the Attorney General's Economic Crimes Division report titled "*Unfair, Deceptive And Unconscionable Acts In Foreclosure Cases*" (Id. at p. 60-62).

**Images from pages 60-62 of the 2010 Florida Office of the Attorney General Economic Crimes Division report titled "*Unfair, Deceptive And Unconscionable Acts In Foreclosure Cases*", exposing the name and forged stamps of "Steve Nagy":**

## Stamped Signatures

Plaintiffs further aver that purported name and signature of "Steve Nagy" displayed upon the piece of paper that suddenly appeared and follows the note instrument that Defendants the DM Firm, Mr. Messinger, Mr. Slipakoff, OFC, PHH, and US Bank trafficked and/or presented in the Second State Foreclosure Action on August 9, 2023, is further suspicious upon comparison of the stamped names for "Steve Nagy" and "Stephen L. Nagy" as an alleged officer for New Century and its affiliate companies displayed upon eleven purported "assignment" instruments retrieved by Plaintiffs that are recorded in the Office of the Burlington County Clerk and land records interstate.

**Images procured from the separate piece of paper that comes after page five of the note instrument filed in the Second State Foreclosure Action on August 9, 2023 by the Debt Collector Defendants as "Exhibit C", followed by eleven (11) "assignment instruments" recorded in the Burlington County Clerk's Office and land records interstate, displaying the varying stamped names "Steve Nagy" and "Stephen L. Nagy" as an alleged officer for New Century and its affiliate companies:**

● ●





50. Plaintiffs aver that because the note instrument enclosed in the January 5, 2024 and May 7, 2024 letters that Defendants NewRez and PHH mailed to Plaintiffs' in response to complaints filed with the CFPB under case numbers 231222-12830907; 231222-12832464; 231222-12832374; 231222-12832562; and 240421-14022012, remains payable to New Century without the forged "Steve Nagy" stamp being displayed upon a separate piece of paper following page five of the note, or on the purported "reverse sided" of page five of the singled signed instrument, upon information and belief, the Ocwen Group, NewRez, and/or Court Office Defendants as participants/members of an enterprise used the wire to illegally create (and/or

retrieved from a computer system) the foregoing counterfeit/forged piece of paper displaying the forged and varying name (and purported signature) of "Steve Nagy" a/k/a "Stephen L. Nagy" filed and presented to the Second State Foreclosure Action on August 9, 2023 by Defendants the DM Firm, Mr. Messinger, Mr. Slipakoff, OFC, PHH, and NewRez.

51.     Plaintiffs further aver, upon information and belief, the foregoing Debt Collector Defendants each knew (or should have known, and are concealing) that the original NC Paper Note signed by Mr. Rogers on November 28, 2006 was deliberately destroyed by New Century (and/or its agents) shortly after its execution by Mr. Rogers, which is a standard industry practice according to admissions made by an industry participant in a judicial proceeding[36], upon (and because of) the illegal creation of the forged/stolen NC eNote also dated November 28, 2006 and made part of the fraud in factum NC Mortgage Loan.   For the foregoing reasons, Plaintiffs aver (upon information and belief), the Debt Collector Defendants are trafficking – at best – images of the original NC Paper Note; and have yet to demonstrate a purchase of the NC Mortgage Loan with a principal balance of $190,800.00, starting with the first sale and assignment from New Century, prior to and/or pursuant to New Century's bankruptcy as of April 2, 2007, and liquidation as of August 1, 2008, despite Plaintiffs' repeated request for evidence dating back as early as 2013 through present date.

---

[36] *See* Comments by the Florida Bankers Association filed with the Supreme Court of Florida in Case No.: 09-1460 in In Re: Amendments to Rules of Civil Procedure and Forms for Use with Rules of Civil Procedure: "It is a reality of commerce that virtually all paper documents related to a note and mortgage are converted to electronic files almost immediately after the loan is closed…. The reason "many firms file lost note counts as a standard alternative pleading in the complaint" is because the physical document was deliberately eliminated to avoid confusion immediately upon its conversion to an electronic file." (Id. at p. 3-4).

52.     Plaintiffs reaver that, contrary to the Debt Collector Defendants' repeated false claims asserted within the last four (4) years (and to present date), that US Bank as the purported trustee for GSAMP Trust 2007-NC1 is the owner in possession of the original NC Paper Note by creating, trafficking, and/or presenting the foregoing two contradictory note instruments as described above in paragraph 49, one of which remains payable to New Century, while the other displays a counterfeit/forged piece of paper with a forged "Steve Nagy" stamp misrepresented by the Debt Collector Defendants to be an indorsement in blank on the purported "reverse side" of a single-sided instrument, neither of the two varying instruments demonstrates the sale and indorsements required by the PSA filed with the SEC on March 22, 2007[37] and recited above in paragraph 25 as though fully incorporated herein by reference, with the last sale and indorsement by GS Securities as the purported "Depositor".

## V.   THE DEBT COLLECTOR DEFENDANTS, WITHOUT PROOF OF PURCHASE, OWNERSHIP, AND ASSIGNMENT OF THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN, ARE CONCEALING INSTALLMENTS PAID BY MS. ROGERS, FABRICATING CLAIMS OF DEFAULT, AND CONTINUING LITTON'S UNCONSCIONABLE DEBT COLLECTION PRACTICES.

53.     On February 1, 2009, the Rogers followed the instructions given to them by agents/employees for Litton during telephone conversations, to cease forwarding installments of principal and interest that the Defendant declared was due and owing towards the NC Mortgage Loan, as a purported prerequisite to qualify for a modification of the subject predatory transaction. Plaintiffs aver that, after the Rogers followed the foregoing instructions given them by Litton's

---

[37] *See* https://www.sec.gov/Archives/edgar/data/1387580/000091412107000742/gs7262421-ex4.txt (last checked 05/11/2024), wherein the PSA for GSAMP Trust 2007-NC1 at Article I (Definitions) on page 40, defines the "Depositor" as GS Securities; and Article II (Conveyance of Mortgage Loans) on pages 66-67, requires the last sale of mortgage loans from the Depositor to LaSalle Bank as Trustee for GSAMP Trust 2007-NC1.

agents/employees, instead of forwarding the Rogers communications pertaining to a modification of the NC Mortgage Loan, Litton (using the mail and wire) begin forwarding notices and threats regarding foreclosure of the subject property.

54.     On June 30, 2009, Litton illegally commenced the First State Foreclosure Action by complaint filed June 30, 2009 (the same day Mr. Rogers died), wherein Litton: (i) falsely designated BOA as Trustee for GSAMP Trust 2007-NC1 as the purported owner of the NC Mortgage Loan by falsely designating MERS as the purported nominee for New Century, as the "assignor" on June 19, 2009[38]; (ii) declared February 1, 2009 as the purported date of default[39]; and (iii) stated it purported election that the whole unpaid principal sum that Litton claimed was due and owing towards the NC Mortgage Loan, was "now due" as of the June 30, 2009 commencement date for the First State Foreclosure Action.[40]

55.     Towards the end of September 2009, with the assistance of counsel from Mattleman Weinroth & Miller, P.C. ("Attorneys MWC"), Ms. Rogers procured a purported "trial modification" agreement created by Litton with an effective date of October 1, 2009 ("*Litton Trial Modification*"), and forwarded the Defendant a certified check in the amount of $3,812.08, towards

---

[38] *Id*. at First Count, ¶2(a)(b).  *See* also <u>Bank of N.Y. v. Raftogianis</u>, 418 N.J. Super. 323, 13 A.3d 435 (N.J. Super. 2010), wherein the Court adjudicated and denied claims pertaining to a purported assignment wherein MERS (as an alleged nominee) is designated as the "assignor", by declaring: (i) that MERS as the purported "…*nominee, does not have any real interest in the underlying debt, or the mortgage which secured that debt.*"" (*Raftogianis*, 418 N.J. Super. 323, 347 (N.J. Super. 2010)), and (ii) that the purported assignment from MERS was "… *at best, a distraction.*" (*Raftogianis*, 418 N.J. Super. 323, 348-49 (N.J. Super. 2010)).

[39] *Id*. at Second Count, ¶3.

[40] *Id*. at First Count, ¶7.

two of three total installments each for $1,906.04 that were demanded by Litton between October 1, 2009 through December 1, 2009.

56.     As of December 1, 2009, Litton accepted (and eventually cashed) the last of three installments in the amount of $1,906.04, that was demanded by the Defendant towards the foregoing Litton Trial Modification.  Defendant Litton, nevertheless, refused to permanently modify the NC Mortgage Loan, and continued its attempted seizure of the subject property in the First State Foreclosure Action, (i) despite Ms. Rogers' compliance with the foregoing instructions given by agents/employees of Litton by ceasing to forward installments of principal and interest starting as February 1, 2009, (ii) despite Ms. Rogers' fulfillment of the terms set for in the foregoing Litton Trial Modification, and (iii)  without evidence of purchasing and assignment of the fraud in factum NC Mortgage Loan, starting with the first sale and assignment from New Century, prior to and/or pursuant to New Century's bankruptcy as of April 2, 2007,[41] and liquidation as of August 1, 2008.[42]

57.     From January 1, 2010 through June 1, 2010, while Ms. Rogers continued grieving the death of Mr. Rogers and remained baffled by the events set forth above in paragraphs 61 through 65, Plaintiff continued her good faith efforts to save the subject property from foreclosure and to procure a modification of the subject fraud in factum NC Mortgage Loan as promised by

_____

[41] *See* In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC).

[42] *See* Yvanova v. New Century Mortgage Corp., et al., Case No. S218973 (Cal. Feb. 18, 2016) ("The lender, and beneficiary of the trust deed, was defendant New Century Mortgage Corporation (New Century). New Century filed for bankruptcy on April 2, 2007, and on August 1, 2008, it was liquidated and its assets were transferred to a liquidation trust...."); *see also* U.S. Bank v. Rogers, No. A-1313-20, 10 n.2 (App. Div. Mar. 18, 2022) ("…There is no information in the record regarding disposition of the note after New Century's bankruptcy and liquidation…").

Litton, by forwarding $10,205.38 (approximately) worth of monthly installments that were demanded, received, and cashed by the Defendant Litton.

58.     From July 1, 2010 through September 2010, Ms. Rogers forwarded $5,177.17 worth of monthly installments that were demanded by Litton towards the subject NC Mortgage Loan; and later rejected by the Defendant upon receipt.  As demonstrated in the August 2, 2010 correspondence from Litton regarding the return of the August 1, 2010 installment sent from Ms. Rogers, the Defendant's reasons for rejecting said payment was "Other: Refer to Thomas Rogers", knowing the latter was deceased since June 30, 2009.

59.     Plaintiffs aver that Ms. Rogers was driven away from her home in the fall of 2010, and she felt defeated upon experiencing the foregoing instances of Litton's unrelenting engagement in unfair and unconscionable debt collection practices as described above in paragraphs 61 through 67, which Plaintiffs aver worsened Ms. Rogers' overall wellbeing as she continued to cope with the death of Mr. Rogers who died the same day Litton commenced its attempted seizure of the subject property with the First State Foreclosure Action.

60.     Plaintiffs aver that, within the last year (and to present date), the RAS Firm; the Firm; OFC; PHH; and NewRez as Debt Collector Defendants, using the mail and wire, have inflicted more distress upon Ms. Rogers by transmitting false debt collection communications wherein the Debt Collector Defendants: (i) concealed the instructions given to the Rogers by agents/employees for Litton, to forego payment of three consecutive installments to qualify for a modification of the subject NC Mortgage Loan, for which the Rogers obliged starting with the installment declared due by Litton as of February 1, 2009; (ii) falsely designated October 1, 2009 as the purported date of default towards the subject NC Mortgage Loan, which contradicts the February 1, 2009 date declared by Litton in the First State Foreclosure Action, and falsely implies

installments were made by Ms. Rogers between February 1, 2009 through September 1, 2009; (iii) concealed Litton's breach upon the Litton Trial Modification effective October 1, 2009, requiring three installments of $1,906.04 (totaling $5,719.20) that were demanded by Litton between October 1, 2009 through December 1, 2009, paid by Ms. Rogers and cashed by Litton; (iv) concealed installments demanded by Litton between January 1, 2010 through June 1, 2010 (totaling $10,205.38), that were paid by Ms. Rogers and cashed by Litton; and (v) concealed installments demanded by Litton between July 1, 2010 through September 1, 2010 (totaling $5,177.17), that were paid by Ms. Rogers, rejected and returned by Litton.

61.     Plaintiffs aver that, during all time relevant to the foregoing events recited above in ¶¶53 through 60 as if fully incorporated herein by reference, when agents/employees for Litton tricked the Rogers into not forwarding Litton three consecutive installments the Defendant claimed was due towards the NC Mortgage Loan as of February 1, 2009, in order to qualify for a modification, Litton acted without any evidence of ownership and/or possession of the NC Mortgage Loan, starting with the first sale and assignment from New Century as the original lender named in the subject fraud in factum transaction, prior to and/or pursuant to New Century's bankruptcy as of April 2, 2007,[43] and liquidation as of August 1, 2008.[44]

---

[43] *See* In re New Century TRS Holdings, Inc., Case No. 07-10416 (KJC).

[44] *See* Yvanova v. New Century Mortgage Corp., et al., Case No. S218973 (Cal. Feb. 18, 2016) ("The lender, and beneficiary of the trust deed, was defendant New Century Mortgage Corporation (New Century). New Century filed for bankruptcy on April 2, 2007, and on August 1, 2008, it was liquidated and its assets were transferred to a liquidation trust...."); *see also* U.S. Bank v. Rogers, No. A-1313-20, 10 n.2 (App. Div. Mar. 18, 2022) ("...There is no information in the record regarding disposition of the note after New Century's bankruptcy and liquidation...").

62.     Plaintiffs aver that, to the extent GSAMP Trust 2007-NC1 claims ownership of and rights to the subject NC Mortgage Loan, the Debt Collector Defendants each know (and are concealing from Plaintiffs) that none of the purported beneficiaries for GSAMP Trust 2007-NC1 have experienced an injury arising from the Rogers' purported defaults towards the subject transaction, upon said parties receiving monthly installments of principal and interest in the form of servicer advances paid by the Ocwen Group and/or NewRez as the owners of purported MSRs associated with the disputed transaction; and said payments of servicer advances were (and continues to be) omitted from debt collection communications created, trafficked, and presented by the Debt Collector Defendants using the mail and wire over the last four (4) years (and to present date), in their attempt to extort monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan, under duress of an unlawful (state assisted seizure) through the Second State Foreclosure Action.

63.     Plaintiffs further aver, upon information and belief, each of the Debt Collector Defendants knew (and are attempting to conceal from Plaintiffs) that the purported "books and records" of the Ocwen Group Defendants and NewRez that references the subject NC Mortgage Loan, that were trafficked/presented by the Defendants using the mail and/or wire within the last four (4) years (and to present date), were created by an unidentified third-party whose identity the Defendants are concealing from Plaintiff; and said purported "books and records" were not created by the Defendants in the ordinary course of their respective business operations.

**VI.    THE COURT OFFICER DEFENDANTS, IN CONSPIRACY WITH OFC AND NEWREZ, MALICIOUSLY ABUSED PROCESS IN THE SECOND STATE FORECLOSURE ACTION TO PROCURE RELIEF THEREIN BY EMPLOYING FALSE CLAIMS, MISREPRESENTATIONS AND OMISSIONS, PERJURED CERTIFICATIONS, FORGERY, IMPOSTERS, AND FALSE ACKNOWLEDGEMENTS BY NOTARIES EMPLOYED BY THE ENTERPRISE.**

64.     Plaintiffs aver that despite (and after) the New Jersey Superior Court's Appellate Division issued an order on March 18, 2022[45], reversing and remanding the September 13, 2016 summary judgment and December 15, 2020 final judgment procured in the Second State Foreclosure Action by the Debt Collector Defendants (through malicious abuse of process), using the name of US Bank (as the purported trustee for GSAMP Trust 2007-NC1), the DM Firm; Mr. Messinger; Mr. Slipakoff; OFC; PHH; and NewRez (together with other persons known and unknown to Plaintiffs) procured another summary judgment order on November 27, 2023 against Ms. Rogers in the Second State Foreclosure Action, through their (continued) employment of fraud; misrepresentations; omissions; and forgery as follows:

  a.  the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm upon the pleadings and certifications filed on August 9, 2023; and falsely stated during hearings in the Second State Foreclosure Action (on or about November 27, 2023), that the DM Group was purported counsel hired and retained by US Bank as the purported trustee for GSAMP Trust 2007-NC1, when they each knew and concealed US Bank's own admissions during a recorded/transcribed telephone call on September 2, 2019,[46] and within the September 17, 2019

---

[45] U.S. Bank v. Rogers, No. A-1313-20 (App. Div. Mar. 18, 2022).

[46] During the September 2, 2019 transcribed telephone conversation between Plaintiffs and employees for US Bank, the latter admitted: (i) they had no knowledge of the Second State Foreclosure Action; (ii) they had no knowledge of the NC Mortgage Loan; and (iii) they did not retain the RAS Group Defendants as the latter claimed in communications filed in the Second State Foreclosure Action, and forwarded to Plaintiffs by the RAS Group Defendants using the mail.

written correspondence (and brochure enclosed thereto),[47] demonstrating that: (i) no such retainer exists wherein US Bank as the purported trustee for GSMAP Trust 2007-NC1 retained the Court Officer Defendants to commence and prosecute the Second State Foreclosure Action; (ii) US Bank has no involvement with the Second State Foreclosure Action; and (iii) US Bank has no knowledge of the purported default subject of the Second State Foreclosure Action, and had has no economic interest thereto.;

b. the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, omitted and concealed from its pleadings and certifications filed on August 9, 2023, and statements made during the hearing in the Second State Foreclosure Action (on or about November 27, 2023), the existence of New Century's April 2, 2007 bankruptcy filing and the debtor's liquidation therein on August 1, 2008.;

c. the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, omitted and concealed from its pleadings and certifications filed on August 9, 2023, and statements made during hearings in the Second State Foreclosure Action (on or

---

[47] As stated in the September 17, 2019 letter from Kevin Goldade ("Mr. Goldade") for US Bank: "The servicer is the party to the Trust that has the authority and responsibility to make decisions regarding individual mortgage loans in the Trust.  The trustee has no authority or responsibility to review and or approve or disapprove of these decisions and actions.  It is the servicer who has taken all action regarding this property and is the proper party to address your concerns... I have included a brochure that further explains the roles of the trust and the servicer that I hope you find helpful... While U.S. Bank understands and wishes to assist you with this matter, the servicer is the only party with the authority and responsibility to make decisions regarding this mortgage and they are not affiliated with U.S. Bank in any way.".

about November 27, 2023), evidence of New Century's bankruptcy trustee's cancellation of the debtor's executory contracts with MERS and MERSCORP as of March 19, 2008.;

d.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, made false claims and misrepresentations within its pleadings and certifications filed on August 9, 2023, false statements during hearings in the Second State Foreclosure Action (on or about November 27, 2023) pertaining to MERS' purported rights to, interest in, and possession of the NC Mortgage Loan, that were previously adjudicated by the same court on June 29, 2010[48], and contradicting MERS' admissions made in previous judicial proceedings.[49];

e.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, made false claims and misrepresentations within pleadings and certifications filed on August 9, 2023; and false statements during hearings in the Second State Foreclosure Action (on or about November 27, 2023), pertaining to BOA's purported rights to, interest in, and possession of the NC Mortgage Loan,

---

[48] *See* <u>Bank of N.Y. v. Raftogianis</u>, 418 N.J. Super. 323, 13 A.3d 435 (N.J. Super. 2010).

[49] *See* the October 21, 2005 order and opinion in <u>Mortgage v. Nebraska</u>, 270 Neb. 529, 532-33 (Neb. 2005); *see also* the February 11, 2011 certification of attorney Brandi Peeples ("Attorney Peeples") as counsel for MERS, that was submitted to this Court in <u>In The Matter of Residential Mortgage Foreclosure Pleading and Document Irregularities</u> (Docket No.: F-00238-11) ("MERS is not a mortgage servicer, nor does MERS own beneficial interests in promissory notes.") (Id. at ¶9), resulting in the August 22, 2011, opinion and order entered in favor of MERS.

contradicting BOA's statements made to Ms. Rogers and the CFPB by letter dated August 11, 2020.;

f.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, made false claims and misrepresentations within pleadings and certifications on August 9, 2023, and false statements during hearings in the Second State Foreclosure Action (on or about November 27, 2023), pertaining to the four forged/falsely acknowledged "assignment of mortgage" instruments recited above in paragraphs 43 through 46 as though fully incorporated herein by reference.;

g.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, made false claims and misrepresentations within pleadings and certifications filed on August 9, 2020, and false statements during hearings in the Second State Foreclosure Action (on or about November 27, 2023), pertaining to the counterfeit/forged note instrument; separate piece of paper; and forged purported "Steve Nagy" "indorsement" on the alleged "reverse side", as recited above in paragraphs 48 through 52 as though fully incorporated herein by reference.;

h.   the Court Officer Defendants, in conspiracy with the Ocwen Group Defendants and NewRez, omitted and concealed from its pleadings, certifications, and/or hearings in the Second State Foreclosure Action the note instrument forwarded to Plaintiffs and the CFBP by the Ocwen Group and/or NewRez, that remains

payable to New Century, without the purported separate piece of paper which displays the forged stamp/name of "Steve Nagy", or without the "Steve Nagy" stamp appearing on the purported "reverse side" of the last page of the singe side instrument.;

i.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, fabricated claims of default towards the subject NC Mortgage Loan by omitting and concealing from its pleadings, certifications, and statements of record in the Second State Foreclosure Action in support of summary judgment procured therein on November 27, 2023, the continued receipt of monthly installments of principal and interest to the unknown beneficiaries of GSAMP Trust 2007-NC1 from servicer advances paid by the Ocwen Group and/or NewRez pursuant to their obligations arising from their purported MSRs.;

j.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, created and filed false certifications in the Second State Foreclosure Action on August 9, 2023 (to procure relief on November 27, 2023), of which includes the August 3, 2023 certification by OFC's employee Ms. Feezer, knowing that filing consist of a false statements by the affiant who – at all relevant time – lacked knowledge as it pertains to the character, ownership, and/or location of the NC Mortgage Loan.; and

k.   the DM Group, in conspiracy with the Ocwen Group Defendants and NewRez, forged the names of Mr. Messinger, Mr. Slipakoff, and the DM Firm, omitted

and concealed from its pleadings, certifications, and statements made in the Second State Foreclosure Action to procure relief therein on November 27, 2023, more than $20,000 in payments made by Ms. Rogers between October 1, 2009 through September 1, 2010, wherein the first three installments paid during said time frame were towards the trial modification that Litton created (and reneged upon); and the last three installments were rejected and returned by Litton.

65.    Plaintiffs aver the most troubling element of the malicious abuse of process in the Second State Foreclosure Action set forth above in paragraph 64 as though fully incorporated herein by reference, is that said illicit conduct which resulted in the unlawful procurement of summary judgment against Ms. Rogers on November 27, 2023, was spearheaded by the DM Firm, Mr. Messinger, and Mr. Slipakoff who, as are attorneys and officers of the court, committed fraud upon said tribunal abandoned their obligations under the Rules of Professional Conduct which includes:

a.    violations of RPC 3.1 upon failing to reframe from engaging in frivolous litigation, upon the Court Officer Defendants' bringing or defending the Second State Foreclosure Action, asserting or controverting an issue therein when they knew (or they should have known) there was no basis in law and fact for doing so.;

b.    violations of RPC 1.2(d) upon failing to reframe from counseling or assisting OFC, PHH, and NewRez in conduct that the Court Officer Defendants knew (or they should have known) is illegal, criminal or fraudulent as recited above in paragraphs ¶¶21 through 69 as if fully incorporated herein by reference.;

c. violations of RPC 1.4(d) upon failing to advise OFC, PHH, and NewRez of the relevant limitations on the Court Officer Defendants' conduct when they knew (or they should have known) that OFC, PHH, and NewRez expected assistance not permitted by the Rules of Professional Conduct or other law.;

d. violations of RPC 1.6(b) failing to reveal such information to the proper authorities, as soon as, and to the extent the Court Officer Defendants knew (or they should have known) was necessary, to prevent OFC, PHH, and NewRez: (i) from committing a criminal, illegal or fraudulent act that the Court Officer Defendants knew (or they should have known) was likely to result in death or substantial bodily harm or substantial injury to the financial interest or property of Plaintiffs; or (ii) from committing a criminal, illegal or fraudulent act that the Court Officer Defendants knew (or they should have known) was likely to perpetrate a fraud upon a tribunal in the Second State Foreclosure Action.

e. violations of RPC 1.16(b) upon failing to decline or terminate representation of OFC, PHH, and/or NewRez upon them persisting in a course of action involving the Court Officer Defendants' services that they knew (or they should have known) was criminal or fraudulent, and/or the client(s) used the lawyers' services to perpetrate a crime or fraud.;

f. violations of RPC 3.3(a) upon failing to demonstrate candor to the court in the Second State Foreclosure Action by knowingly: (i) making a false statement of material fact or law to the tribunal; (ii) failing to disclose a material fact to the tribunal when disclosure was necessary to avoid assisting an illegal, criminal or fraudulent act by OFC, PHH, and NewRez; (iii) failing to disclose to the tribunal

legal authority in the controlling jurisdiction known to the lawyers to be directly adverse to the position of OFC, PHH, and NewRez; (iv) offering evidence that the lawyers knew (or they should have known) to be false; and failing to take reasonable remedial measures when made aware by Plaintiffs that material evidence offered by the Court Officer Defendants' was (and remains) false; and (v) failing to disclose to the tribunal material facts knowing that the omission is reasonably certain to mislead the tribunal.;

g.  violations of RPC 3.4 upon failing to demonstrate fairness to Plaintiffs as opposing parties by: (i) unlawfully obstructing Plaintiffs' access to evidence or unlawfully altering, destroying or concealing documents or other materials having potential evidentiary value; and counseling or assisting OFC, PHH, and/or NewRez to do any such act; (ii) falsifying evidence, counsel or assisting a witness to testify falsely, and offering an inducement to a witness that is prohibited by law; and

h.  violating RPC 3.4(a) upon failing to demonstrate truthfulness in statements to Plaintiffs, by knowingly: (i) making false statements of material fact or law to Plaintiffs; and (ii) failing to disclose material facts to Plaintiffs when disclosure was necessary to avoid assisting a criminal or fraudulent act by OFC, PHH, and NewRez.

*See* In re Giuliani, Motion No. 2021-00491, 2-3 (N.Y. App. Div. 2021) ("Under the Rules of Professional Conduct, the prohibition against false statements is broad and includes misleading statements as well as affirmatively false statements (Matter of Antoine, 74 AD3d 67, 72 [1st Dept 2010]; Matter of Piepes, 259 AD2d 135, 137 [2d Dept 1999]; see ABA Model Rule 4.1,

commentary ["Misrepresentations can also occur by partially true, but misleading statements or omissions that are the equivalent of affirmative false statements"]). In addition, the Rules concern conduct both inside and outside of the courtroom (see Matter of Coyne, 136 AD3d 176 [1st Dept 2016]; Matter of Liotti, 111 AD3d 98 [1st Dept 2013], lv denied 22 NY3d 862 [2014]; Matter of Rios, 109 AD3d 64 [1st Dept 2013]; Matter of Krapacs, 189 AD3d 1962 [3d Dept 2020]).");  *see also* In re Blatt, 65 N.J. 539, 545 (N.J. 1974) ("A lawyer may not follow the directions of a client without first satisfying himself that the latter is seeking a legitimate and proper goal and intends to employ legal means to attain it. It is no excuse for an attorney to say that he only did what he did because directed to do so by his client. The propriety of any proposed course of action must be initially considered by the attorney, and it may be thereafter pursued only if the lawyer is completely satisfied that it involves no ethical compromise.");  *see also* King v. Whitmer, 556 F. Supp. 3d 680, 688-89 (E.D. Mich. 2021) ("Specifically, attorneys have an obligation to the judiciary, their profession, and the public (i) to conduct some degree of due diligence before presenting allegations as truth; (ii) to advance only tenable claims; and (iii) to proceed with a lawsuit in good faith and based on a proper purpose. Attorneys also have an obligation to dismiss a lawsuit when it becomes clear that the requested relief is unavailable.").

## VII. PLAINTIFFS HAVE ENDURED SEVERE EMOTIONAL DISTRESS INFLICTED UPON THEM BY THE DEBT COLLECTOR DEFENDANTS, OF WHICH INCLUDES THE COURT OFFICER DEFENDANTS, ACTING IN CONSPIRACY WITH THE STATE ACTOR NOTARY PUBLIC OFFICIALS WHO WERE (AT ALL RELEVANT TIMES) EMPLOYED BY THE OCWEN GROUP DEFENDANTS.

66.     Plaintiffs aver that, at times relevant to the instant matter, the Defendants (of which includes the Court Officer Defendants named herein), acting in conspiracy with the state actor notary publics recited above in paragraphs 44 through 46 as though fully incorporated herein by reference, the latter of whom are employed by the Ocwen Group Defendants, in furtherance of the

Debt Collector Defendants attempted extortion of monies from Plaintiffs towards the subject fraud in factum NC Mortgage Loan, under duress (and threat) of an attempted (state assisted) seizure of Plaintiffs' real property through malicious abuse of process as described above in paragraphs 41 through 65 as though fully incorporated herein by reference.

67.    Plaintiffs aver the unlawful conduct by the Defendants set forth above in paragraphs 41 through 65 as though fully incorporated herein by reference, is a continuation of the illegal debt collection and foreclosure practices started by Litton in the fall of 2008, culminating with the death of Mr. Rogers on June 30, 2009.  the same day the First State Foreclosure Action was commenced

68.    Plaintiffs further aver that the unlawful conduct by the Defendants set forth above in paragraphs 41 through 65 as though fully incorporated herein by reference, has caused severe distress to Plaintiffs and Ms. Forrester, the latter of whom succumbed to cancer on March 22, 2022, several days after the RAS Firm illegally attempted to seize title to Plaintiffs' real property by Sheriff's Sale that was scheduled for March 17, 2022 (and stayed by Mr. Owens' bankruptcy petition and automatic stay), and several days after the Superior Court of New Jersey's Appellate Division issued its March 18, 2022 order reversing the September 13, 2016 summary judgment and December 15, 2020 final judgment orders procured by the DM Firm, Mr. Messinger, and the Ocwen Group through malicious abuse of process as described above.

69.    Today, Plaintiffs still suffer from severe emotional distress from the conduct by the Defendants complained of herein, while Ms. Rogers battles a stage four cancer diagnosis; and Mr. Owens has anguished for nearly twelve years battling the Defendants and, in the process, lost time with his now deceased spouse and his two dependent sons; and lost earnings that could have been procured applying Mr. Owens' licenses as a New Jersey real estate agent and insurance producer.

### CAUSES OF ACTION

### COUNT ONE
### DECLARATORY JUDGMENT GRANTING PLAINTIFFS' CLAIM FOR RECOUPMENT, TO EXTINGUISH THE TOTAL AMOUNT DECLARED BY THE DEBT COLLECTOR DEFNDANTS, DUE AND OWING TOWARDS THE SUBJECT FRAUD IN FACTUM NC MORTGAGE LOAN.

70.     Plaintiffs reaver to the foregoing statements set forth above in ¶¶21 through 69, as if fully incorporated herein by reference.

71.     In New Jersey, recoupment is defined as "the reduction of a claim because of an offsetting claim arising out of exactly the same transaction…." (See Beneficial Finance Co. of Atl. City v. Swaggerty, 86 N.J. 602, 609 (N.J. 1981), citing Gibbins v. Kosuga, 121 N.J. Super. 252, 258 (Law Div. 1972).  Furthermore, as set forth at N.J.S.A. 12A:3-305a(1), defenses and claims in recoupment, the right to enforce the obligation of a party to pay an instrument is subject to "… (1) a defense of the obligor based on… illegality of the transaction which, under other law, nullifies the obligation of the obligor, fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms,…" (N.J.S.A. 12A:305a(1)).

72.     Plaintiffs reaver that, for the reasons set forth above in ¶¶37-40, as if fully incorporated herein by reference, the subject NC Mortgage Loan is fraud *in factum*, unconscionable, high-cost, predatory (per se), forged and falsely underwritten by NC Mortgage (through its agents).

73.     Plaintiffs declares that none of the Defendants named in the above captioned matter: (i) are NC Mortgage, the latter party being the purported lender for the subject fraud in factum NC Mortgage Loan; (ii) have yet to demonstrate holder in due course status as set forth at N.J.S.A. 12A:3-302, despite repeated request made by Plaintiffs pursuant to 15 U.S.C. § 1962(g);

(iii) have yet to demonstrate their purchase of the NC Mortgage Loan, starting with the first sale and assignment from NC Mortgage, prior (or pursuant to) NC Mortgage's April 2, 2007 bankruptcy petition and August 1, 2008 liquidation.

74.     For the foregoing reasons, Plaintiffs hereby move for a declaratory judgment granting recoupment to extinguish the total amount the Debt Collector Defendants claim to be due and owing towards the subject fraud in factum NC Mortgage Loan.

**<u>COUNT TWO</u>**
**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT, PURSUANT TO 15 U.S.C. § 1692(d)(e), AND ACTIONABLE PURSUANT TO  15 U.S.C. § 1692k. AGAINST RAS FIRM, DM FIRM, PHH, AND NEWREZ.**

75.     Plaintiffs reaver to the foregoing statements set forth above in ¶¶21 through 69, as if fully incorporated herein by reference.

76.     As set forth at 15 U.S.C. § 1692a(6), definitions, the term "debt collector" means "…any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.. .." See 15 U.S.C. § 1692a(6).

77.     As set forth at 15 U.S.C. § 1692d, harassment or abuse, a debt collector is prohibited from engaging "…in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt…", of which includes (and is not limited to), the use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person. *See* 15 U.S.C. § 1692d.

78.     As set forth at 15 U.S.C. § 1692e, false or misleading representations, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt, of which includes (and is not limited to), (i) the false representation

of the character, amount, or legal status of any debt; (ii) the representation or implication that nonpayment of any debt will result in the seizure or sale of any property, unless such action is lawful; (iii) the threat to take any action that cannot legally be taken or that is not intended to be taken; (iv) the use or distribution of any written communication which creates a false impression as to its source, authorization, or approval; and (v) the use of any false representation or deceptive means to collect or attempt to collect any debt.  *See* 15 U.S.C. § 1692e.

79.     Plaintiffs aver that, within the last year, the RAS Firm, the DM Firm, PHH, and NewRez have each acted in the capacity of debt collectors, who demanded monies from Plaintiffs towards the subject NC Mortgage Loan, and threatened to seize Plaintiffs' real property by prosecuting the Second State Foreclosure Action, by claiming that US Bank as the purported trustee for GSAMP Trust 2007-NC1 is the purported owner a/k/a creditor for the NC Mortgage Loan.

80.     Plaintiffs reaver that, for the reasons set forth above in paragraphs ¶¶21-65 as though fully incorporated herein by reference, the RAS Firm; the DM Firm; PHH; and NewRez in their respective capacities as debt collectors, within the last year, violated 15 U.S.C. §§ 1692d, 1692e, and 1692f, by:

   a.   harassing, oppressing, and abusing Plaintiffs in connection with the collection of the subject fraud in factum NC Mortgage Loan; and used criminal means to harm the reputation and real property of Plaintiffs.;

   b.   using false, deceptive, and misleading representations in connection with the collection of the subject fraud in factum NC Mortgage Loan, of which included (and is not limited to), the false representation of the character, amount, or legal status of the NC Mortgage Loan;

c. misrepresenting that nonpayment would result in the seizure or sale of Plaintiffs' real property; and threatened to seize said property upon prosecuting the Second State Foreclosure Action through abuse of process by employing false presentations, omissions, forged and unauthenticated evidence.

d. using and distributing written communications to create a false impression as to its source, authorization, or approval; and

e. using false representations or deceptive means, in general, to collect or attempt to collect upon the subject fraud in factum NC Mortgage Loan.

81. Plaintiffs aver the foregoing acts by the RAS Firm, the DM Firm, PHH, and NewRez in their respective capacities as debt collectors, within the last year, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

**COUNT THREE**
**MALICIOUS ABUSE OF PROCESS.**
**AGAINST DM FIRM, MR. MESSINGER, MR. SLIPAKOFF, OFC, PHH,**
**NEWREZ, AND US BANK.**

82. Plaintiffs reaver and restate to the foregoing statements set forth above in paragraphs ¶¶21 through 69, as if fully incorporated herein by reference.

83. In New Jersey, the two basic elements that must be shown to support an action for malicious abuse of process are: "…(1) that defendant made an illegal, improper, perverted use of the process, a use neither warranted nor authorized by the process; and (2) that defendant had an ulterior motive in exercising such illegal, perverted or improper use of the process. Ash v. Cohn, 119 N.J.L. 54 (E. A. 1937). The gist of the action, as distinguished from malicious prosecution and malicious use of process, is the unlawful use of a lawful process after its issuance. State of Ohio v. Clarke, 129 N.J. Eq. 372 (E. A. 1941); Schneider v. Mueller, 132 N.J.L. 163 (E. A. 1944);

Lakutis v. Greenwood, 9 N.J. 101 (1952); Earl v. Winne, 14 N.J. 119 (1953)." (Earl v. Winne, 34 N.J. Super. 605, 614 (Law Div. 1955).

84.     Plaintiffs aver that, for the reasons set forth above in paragraphs ¶¶64 through 65 as if fully incorporated herein by reference, the DM Firm; Mr. Messinger; Mr. Slipakoff; OFC; PHH; and NewRez committed malicious abuse of process to procure relief in the Second State Foreclosure Action upon issuance of the November 27, 2023 order for summary judgment, upon said Defendants employing: (i) false pleadings and claims, in general; (ii) forged pleadings by the Court Officer Defendants the DM Firm, Mr. Messinger, and Mr. Slipakoff who falsely designated themselves as purported counsel hired and retained by US Bank as the (purported) trustee for GSAMP Trust 2007-NC1; (iii) false acknowledgements by notary publics employed by the Ocwen Group and third-party conspirators; (iv) the First Forged AOM and the Second Forged AOM, while omitting and concealing the existence of the Third Forged AOM and the Fourth Forged AOM;  (v) a forged/counterfeit note instrument that Defendants misrepresented to be a true copy of the original, and said document displays a forged stamp displaying the name of "Steve Nagy", the latter of whom is addressed in the 2010 report by the State of Florida Attorneys General, and said stamp is misrepresented to be an indorsement on the purported "reverse side" of the single sided document; and (vi) perjured certifications by persons also employed by OFC, who lacked knowledge as it pertains to the character, ownership, and location of the subject NC Mortgage Loan.

85.     Plaintiffs further aver that, the malicious abuse of process in the Second State Foreclosure Action that is complained of herein, was orchestrated by the Court Officer Defendants DM Firm, Mr. Messinger, and Mr. Slipakoff as officers of the court who abandoned (and violated)

their respective obligations under the Rules of Professional Conduct, and committed fraud upon said tribunal as set forth above in ¶¶64 through 65 as if fully incorporated herein by reference.

86.     Plaintiffs aver the foregoing acts the DM Firm, Mr. Messinger, Mr. Slipakoff, OFC, PHH, and NewRez, each in conspiracy with US Bank, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs, constituting malicious abuse of process, and causing injury to Plaintiffs as contemplated by the tort.

**COUNT FOUR**
**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT PURSUANT TO N.J.S.A. 56:8-2 ET SEQ., ACTIONABLE PURSUANT TO N.J.S.A. 56:8-19. AGAINST THE RAS FIRM, THE DM FIRM, OFC, PHH, AND NEWREZ.**

87.     Plaintiffs reaver and restate to the foregoing statements set forth above in paragraphs ¶¶21 through 69 as if fully incorporated herein by reference.

88.     Defendants RAS Firm, DM Firm, OFC, PHH, and NewRez have engaged in practices in violation of the New Jersey Consumer Fraud Act at N.J.S.A. 56:8-2, which prohibits:

> "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing[] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of merchandise…"

See Gonzalez v. Wilshire Credit Corp. from the Supreme Court of New Jersey (August 29, 2011, A-99 September Term 2009, 065564), explaining that the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -195: "… provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace. Lee v. Carter-Reed Co., 203 N.J. 496, 521 (2010)…. The CFA is intended to be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud, Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 264

(1997), and therefore to be liberally construed in favor of the consumer, <u>Cox</u>, supra, 138 N.J. at 15. Because the fertility of the human mind to invent new schemes of fraud is so great, the CFA Doe's not attempt to enumerate every prohibited practice, for to do so would severely retard[] its broad remedial power to root out fraud in its myriad, nefarious manifestations. <u>Lemelledo</u>, supra, 150 N.J. at 265 (quoting <u>Kugler v. Romain</u>, 58 N.J. 522, 543 n.4 (1971)).".

89.    Plaintiffs reaver that, for the reasons set forth above in paragraph ¶¶21 through 65 as if fully incorporated herein by reference, within the last year (and to present date) the RAS Firm; the DM Firm; OFC; PHH; and NewRez, who are collectively named herein as the Debt Collector Defendants, employed deceptive and unconscionable practices in an attempt to extort monies from Plaintiffs' towards the subject NC Mortgage Loan, under duress (and threat) of an illegal state assisted seizure of Plaintiffs' real property through abuse of process in the Second State Foreclosure Action, of which includes:

a.    misrepresenting the character of the subject NC Mortgage Loan, and omitting illegalities therein as set forth above in paragraphs ¶¶37 through 40 as if fully incorporated herein by reference.;

b.    misrepresenting US Bank as the purported trustee for GSAMP Trust 2007-NC1 as owner of the NC Mortgage Loan, without demonstrating the first sale and transfer coming from NC Mortgage prior (or pursuant) to the latter's bankruptcy status as of the April 2, 2007 petition date and the August 1, 2008 liquidation; and without demonstrating the intervening sales and transfers to GSAMP Trust 2007-NC1 as set forth in the PSA filed with the SEC on March 22, 2007, the last of which from GS Securities to LaSalle Bank by the February 20, 2007 "Start-up" a/k/a "Closing Date".;

c. creating, recording, trafficking, and/or presenting four forged/falsely acknowledged "assignment of mortgage" instruments that are void (as a matter of fact and law), starting with the first forged document that was created and recorded by Defendant Litton (in conspiracy with non-parties PHS Firm), which falsely designates MERS as the purported nominee for NC Mortgage, as the assignor of the subject fraud in factum NC Mortgage Loan on June 19, 2009;

d. misrepresenting in the First Forged AOM that BOA as the purported trustee for GSAMP Trust 2007-NC1, under the purported care of Litton, as the assignee, was assigned the subject NC Mortgage Loan from MERS as the purported nominee for NC Mortgage on June 19, 2009, when – at all relevant times – (i) MERS was without ownership, possession, or rights to the NC Mortgage Loan; (ii) GSAMP Trust 2007-NC1 had closed as of February 20, 2007, and the last sales and transfers were required from GS Securities to LaSalle Bank as trustee for GSAMP Trust 2007-NC1 according to the PSA filed with the SEC on March 22, 2007; (iii) NC Mortgage was bankrupt as of April 2, 2007, its executory contracts with MERS were cancelled by notice filed March 19, 2008, and liquidated as of August 1, 2008; and (iv) BOA admitted to Plaintiffs and the CFPB through letter dated August 11, 2020, that BOA never owned and never assigned the subject NC Mortgage Loan.;

e. misrepresenting within the Second Forged AOM, Third Forged AOM, and Fourth Forged AOM, that BOA as the purported trustee for GSAMP Trust 2007-NC1, was the assignee of the subject NC Mortgage Loan on April 7, 2012 under the purported care of OLS; on October 24, 2017 under the purported care

of Litton; and (again) on July 10, 2019, when BOA as the purported trustee for GSAMP Trust 2007-NC1 never owned and/or possessed the NC Mortgage Loan as BOA itself admitted in the August 11, 2020 correspondence to Plaintiffs and the CFPB, and because MERS (as the purported nominee for NC Mortgage) was – at time – without ownership, possession, and/or authority of the NC Mortgage Loan.;

f.  knowing (and concealing) that Litton participated in the creation of the First Forged AOM; knowing the statements set forth therein are false; knowing the purported signor is an imposter who – at all relevant times – was an attorney employed by the PHS Firm, lacked the capacity claimed therein, and lacked knowledge as to the character, ownership, and possession of the NC Mortgage Loan.;

g.  knowing (and attempted to conceal) that OLS and the DM Firm created the Second Forged AOM; knowing the statements set forth therein are false; knowing the purported signor is an imposter who – at all relevant times – was employed by OLS and/or OFC, lacked the capacity claimed therein, and lacked knowledge as to the character, ownership, and possession of the NC Mortgage Loan; knowing the purported witness was – at all times employed – by OLS and/or OFC, and knew the purported signor lacked the capacity claimed within the document; and knowing the acknowledgement displayed therein was – at all relevant times – employed by OLS and/or OFC, and the notary public knew the purported signor lacked the capacity claimed.;

h.  knowing (and attempted to conceal) that OLS created the Third Forged AOM;
    knowing the statements set forth therein are false; knowing the purported signor
    is an imposter who – at all relevant times – was employed by OLS and/or OFC,
    lacked the capacity claimed therein, and lacked knowledge as to the character,
    ownership, and possession of the NC Mortgage Loan; and knowing the
    acknowledgement displayed therein was – at all relevant times – employed by
    OLS and/or OFC, and the notary public knew the purported signor lacked the
    capacity claimed.

i.  knowing (and concealing) that OLS and the RAS Firm created the Fourth
    Forged AOM; knowing the statements set forth therein are false; knowing the
    purported signor is an imposter who – at all relevant times – was employed by
    OLS and/or OFC, lacked the capacity claimed therein, and lacked knowledge
    as to the character, ownership, and possession of the NC Mortgage Loan; and
    knowing the acknowledgement displayed therein was – at all relevant times –
    employed by OLS and/or OFC, and the notary public knew the purported signor
    lacked the capacity claimed.

j.  creating, trafficking, and/or presenting two contradictory note instruments
    wherein: (i) the one instrument presented to Plaintiffs this year by OFC and
    PHH, in response to two complaints filed with the CFPB, remains payable to
    NC Mortgage Co., without any stamps presented as an indorsement on the last
    page; on the purported "reverse side"; on a separate piece of paper; or by a
    purported allonge; and (ii) the instrument presented filed in the Second State
    Foreclosure Action and forwarded to Plaintiffs by the DM Firm and Ocwen

69

Group Defendants, displays a forged/counterfeit stamp upon a separate piece of paper which said Defendants are falsely claiming to be a purported "indorsement" on the "reverse side" when the NC Paper Note signed by Mr. Rogers on November 28, 2006 is a single sided instrument, and the name (and purported signature) of one "Steve Nagy" that appears on the undated stamp, that was not enclosed within neither the January 5, 2024 or May 7, 2024 responses from NewRez and PHH, is a verified forgery as set forth above in ¶¶48 through 52, as if fully incorporated herein by reference.;

k. omitting payments made by Ms. Rogers; fabricating purported defaults; and continuing Litton's unconscionable debt collection practices as set forth above in ¶¶53 through 63 as if fully incorporated herein by reference.

90.    Plaintiffs aver the foregoing acts the RAS Firm, the DM Firm, OFC, PHH, and NewRez, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

## COUNT FIVE
### CIVIL CONSPIRACY TO DEFRAUD.
### AGAINST RAS FIRM, MR. KUNDRAT, DM FIRM, MR. MESSINGER, MR. SLIPAKOFF, OFC, PHH, NEWREZ, AND US BANK.

91.    Plaintiffs reaver and restate to the foregoing statements set forth above in ¶¶21 through 69 as if fully incorporated herein by reference.

92.    To state a claim for civil conspiracy, a plaintiff must allege that the defendant (1) entered into an agreement with at least one other person, (2) for the purpose of committing an unlawful act, and (3) one of the conspirators then took at least one overt act in furtherance of the

agreement, and (4) plaintiff suffered some damage as a result.  See Banco Popular North America v. Gandi, 184 N.J. 161, 177 (2005).

93.     Plaintiffs aver that, within the last two years (and to present date), the RAS Firm, Mr. Citron, Ms. Stead, Mr. Kundrat, the DM Firm, Mr. Messinger, Mr. Slipakoff, OFC, PHH, and NewRez (collectively referred to as the "Debt Collector Defendants"), along with US Bank: (1) entered into an agreement with each other, and other non-parties to this action including - but not limited to - state notary publics employed by the Ocwen Group; (2) for the purpose of attempting to extort monies from Plaintiffs' towards the subject fraud in factum NC Mortgage Loan, under duress (and threat) of an illegal state assisted seizure of Plaintiffs' real property through abuse of process upon Defendants' employment of false pleadings and claims; misrepresentations and omissions; forged and unauthenticated evidence; false acknowledgments; and perjury; (3) at a minimum, the Court Officer Defendants along with the Ocwen Group, took several overt acts in furtherance of the agreement; and (4) Plaintiffs suffered injuries which includes, but is not limited to, severe emotional distress; damage to their reputations; and loss of time and opportunities.

94.     Plaintiffs aver the foregoing acts by the Debt Collector Defendants and US Bank, were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

**COUNT SIX**
**INFLICTION OF EMOTIONAL DISTRESS.**
**AGAINST RAS FIRM, MR. KUNDRAT, DM FIRM, MR. MESSINGER, MR. SLIPAKOFF, OFC, PHH, NEWREZ, AND US BANK.**

95.     Plaintiffs reaver and restate to the foregoing statements set forth above in ¶¶21 through 69 as if fully incorporated herein by reference.

96.     In New Jersey, "… to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (N.J. 1988).

97.     Plaintiffs aver the conduct by the RAS Firm, Mr. Citron, Ms. Stead, Mr. Kundrat, DM Firm, Mr. Messinger, Mr. Slipakoff, OFC, PHH, and NewRez (collectively referred to as the "Debt Collector Defendants"), demonstrates their intentional and outrageous conduct, which is the proximate cause of Plaintiffs' severe distress complained of herein.

98.     Plaintiffs aver the foregoing acts by the Debt Collector Defendants were intentional, willful, deliberate, wonton, reckless, actuated with forethought and malice, performed under color of law, without regard to the damage that these acts might cause the Plaintiffs.

**COUNT SEVEN**
**DECLARATORY JUDGMENT ORDERING PRESENTMENT OF THE NC ENOTE ASSIGNED MORTGAGE IDENTIFICATION NUMBER ("MIN") 100488910111291471, PURSUANT TO 15 U.S.C. § 7021(f).**
**AGAINST OFC, PHH, NEWREZ, AND US BANK.**

99.     Plaintiffs adopt the factual allegations set forth above in ¶¶21 through 69 as if fully incorporated herein by reference.

100.    As set forth in 15 U.S.C. § 7021(f): "If requested by a person against which enforcement is sought, the person seeking to enforce the transferable record shall provide reasonable proof that the person is in control of the transferable record. Proof may include access to the authoritative copy of the transferable record and related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record."

101.    As set forth above in ¶¶32(c) and 39 as if fully incorporated herein by reference, the subject fraud in factum NC Mortgage Loan includes the unlawful creation of the NC eNote with a principal balance of $190,800.00, which the Rogers never knew about or gave their explicit consent for the electronic note that was made part of the NC Mortgage Loan, as required by the Uniform Electronic Transactions Act ("UETA") (See 15 U.S.C. § 7021.  UETA §16).  Plaintiffs further aver that Mr. Rogers, as the sole obligor for the subject fraud in factum NC Mortgage Loan, never electronically signed the NC eNote that was illegally made part of the NC Mortgage Loan dated November 28, 2006, as was required by Electronic Signatures in Global and National Commerce Act ("ESIGN") (See 15 U.S.C. § 7001 et seq.), and someone other than Mr. Rogers forged his electronic signature upon the NC eNote.

102.    Plaintiffs further aver, upon information and belief, that foregoing forged/stolen NC eNote assigned the 18-digit "Mortgage Identification Number" ("MIN") of 100488910111291471, was registered on the MERS® eRegistry / MERS® System by NC Mortgage Co., and continues to be registered therein by OFC, PHH, and/or NewRez.

103.    As set forth in 15 U.S.C. § 7021(f): "If requested by a person against which enforcement is sought, the person seeking to enforce the transferable record shall provide reasonable proof that the person is in control of the transferable record. Proof may include access to the authoritative copy of the transferable record and related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record."

104.    Hence, Plaintiffs herein move for declaratory relief, directing Defendants OFC, PHH, NewRez, and US Bank, pursuant to 15 U.S.C. § 7021(f), to provide Plaintiffs: (1) access to the authoritative copies of the electronic notes assigned MIN 100488910111291471 and registered

on the MERS® eRegistry / MERS® System; and (2) related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record.

## COUNT EIGHT
## QUIET TITLE PURSUANT TO N.J.S.A. 2A:62-1.

105.    Plaintiffs adopt the factual allegations set forth above in ¶¶21 through 69 as if fully incorporated herein by reference.

106.    As set forth at N.J.S.A. 2A:62-1, a person "*in the peaceable possession of lands*" to bring an action to "*clear up all doubts and disputes*" concerning some other person's claim to "*a lien or encumbrance thereon*." (N.J.S.A. 2A:62-1).

107.    There is a dispute as to: (1) the legality of the subject NC Mortgage Loan recited above in ¶¶37 through 40; and (2) the ownership and right to enforce the NC Mortgage Loan, for the reasons set forth above in ¶¶21 through 52 as if fully incorporated herein by reference.

108.    Mr. Owens, as the fee simple owner of the subject property, seeks clarification of the validity or reach of his title in circumstances that otherwise preclude a forum for the resolution of such a dispute, pursuant to N.J.S.A. 1A:62-1.

109.    At all times relevant hereto, Defendants OFC, PHH, and NewRez (using the name of US Bank) have claimed an interest and/or estate in the subject property, adverse to Mr. Owens.

110.    Plaintiffs, therefore, allege that, upon information and belief, none of the Defendants named herein hold a perfected and/or secured interest and/or claim in the subject property and, as such, Defendants are estopped and precluded from asserting any claim against Plaintiffs' estate.

111.    There is currently no other forum for an adjudication of the dispute herein and there are no other adequate remedies at law.

## <u>PRAYER FOR RELIEF</u>

The Plaintiffs pray for relief from this Honorable Court as follows:

I.      For Count One, Awarding Plaintiffs declaratory judgment granting recoupment to extinguish the total amount the Debt Collector Defendants claim to be due and owing towards the subject NC Mortgage Loan.

II.     For Count Two, Awarding Plaintiffs the maximum relief allowed by statute.

III.    For Count Three, Awarding Plaintiffs compensatory damages to be determined and punitive damages for $333,333,333.00.

IV.     For Count Four, Awarding Plaintiffs the maximum relief allowed by statute.

V.      For Count Five, Awarding Plaintiffs compensatory damages to be determined and punitive damages for $333,333,333.00.

VI.     For Count Six, Awarding Plaintiffs compensatory damages to be determined and punitive damages for $$333,333,333.00.

VII.    For Count Seven, Awarding Plaintiffs declaratory relief directing Defendants OFC, PHH, NewRez, and US Bank, pursuant to 15 U.S.C. § 7021(f), to provide Plaintiffs: (1) access to the authoritative copies of the electronic notes assigned MIN 100488910111291471 and registered on the MERS® eRegistry / MERS® System; and (2) related business records sufficient to review the terms of the transferable record and to establish the identity of the person having control of the transferable record.

VIII.   For Count Eight, Awarding Plaintiff Mr. Owens quiet title relief, directing the Office of the Burlington County Clerk to discharge the mortgage instrument at Mortgage Book 11240, Page 852.

## CLAIMS RESERVED

The Plaintiffs herein reserve all claims against non-parties to this complaint that are not designated as Defendants in this matter, allowing the Plaintiffs an opportunity to discover all relevant facts and any and all claims against the non-parties.

## EQUITABLE TOLLING

The Plaintiffs herein invokes equitable tolling in order to preserve any and all claims recently discovered by the Plaintiffs, and or the conduct complained is continuous.

Dated: July 19, 2024

Clarence E. Owens
11 Stafford Lane
Willingboro, NJ 08046
Tel: 609-686-0557
Email: clayowenslfg@gmail.com

Dated: July 19, 2024

Frances Rogers
2401 Acron Drive,
Killeen, Texas 76543
Email: justice4tfrogers@gmail.com